# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**
------------------------------------------------------------------ X
HICKSVILLE WATER DISTRICT,

Plaintiff,

- against -

JERRY SPIEGEL ASSOCIATES, INC., E-Z-EM, INC., ARKWIN INDUSTRIES, INC., 1ST STATE, LLC, TISHCON CORP., C&O REALTY CORP., WESTBURY JEEP, CHRYSLER, DODGE, INC., WILLIAM A. GROSS CONSTRUCTION ASSOCIATES, INC. GRAND MACHINERY EXCHANGE, INC., ADVANCE FOOD SERVICES EQUIPMENT, INC., currently doing business as ADVANCE TABCO, INC., IMC EASTERN CORPORATION, ALSY MANUFACTURING, currently doing business as EMESS MANUFACTURING, INC., LBA PROPERTIES, INC., MATCO SERVICE CORP., ADCHEM CORP, currently doing business as RPJ ENTERPRISES, INC., EFFICIENCY SYSTEMS CO., INC., HUBBERT FREUND WOODWORKING COMPANY INCORPORATED, KORG U.S.A. Inc., HURON TOOL & CUTTER GRINDING CO., INC., ROYAL GUARD FENCE CO., INC., METPAR CORP., BLEN-CAL ELECTRONICS INDUSTRIALS, INC., B&G LIGHTING, currently doing business as SPECTRUM SIGNS, INC., UTILITY MANUFACTURING CO., INC., AVANEL INDUSTRIES, INC., ISLAND TRANSPORTATION CORPORATION, NEST EQUITIES, OSRAM SYLVANIA PRODUCTS, INC., currently doing business as OSRAM SYLVANIA, INC., GTE CORPORATION, FUJIFILM NORTH AMERICA CORPORATION, ANCHOR/LITH-KEM-KO, INC., VISHAY GSI, INC., AIR TECHNIQUES, INC.,

Defendants.

------------------------------------------------------------------X

**INDEX NO.:**

**SUMMONS**

Plaintiff designates NASSAU County as the place of trial

The basis of venue:

**CAUSE OF ACTION AROSE IN NASSAU COUNTY**

To the above-named defendants:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service if complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.


Dated:  New York, New York
          September 23, 2019

**NAPOLI SHKOLNIK, PLLC**
*Attorneys for Plaintiff*

_____
Paul J. Napoli, Esq.
Tate J. Kunkle, Esq.
360 Lexington, 11th Floor
New York, New York 10017
(212) 397-1000

**To:**

Jerry Spiegel Associates, Inc.
375 N. Broadway
Penthouse
Jericho, New York, 1360511753

E-Z-EM, Inc.
1111 Marcus Ave.
Suite M-60
Lake Success, New York, 11042

Arkwin Industries, Inc.
686 Main Street
Westbury, New York, 11590-9035

1st State, LLC
125 State Street
Westbury, New York, 11590

Tishcon Corp.
30 New York Avenue
Westbury, New York, 11590

C&O Realty Corp.
3375 Park Ave Ste 4005
Wantagh, New York, 11793

Westbury Jeep Chrysler Dodge, Inc.
265 Foxhunt Crescent
Syosset, New York, 11791

William A. Gross Construction Associates, Inc.
117 S 4th St
New Hyde Park, New York, 11040-4833

Grand Machinery Exchange, Inc.
1765 Expressway Drive
North Hauppauge, New York, 11788

Advance Food Services Equipment, Inc.
Currently doing business as Advance Tabco, Inc.
200 Heartland Blvd
Edgewood, New York

IMC Eastern Corporation
9730 Independence Ave.
Chatsworth, California, 91311

Alsy Manufacturing
Currently doing business as EMESS Manufacturing, Inc.
15 East 26th St.
New York, New York, 10010

LBA Properties, Inc.
764 Rossville Ave.
Staten Island, New York, 10309

MATCO Service Corp.
584 Mineola Ave
Carle Place, New York, 11514

ADCHEM Corp.
Currently doing business as RPJ Enterprises, Inc.
1852 Old Country Rd
Riverhead, New York, 11901

Efficiency Systems Co., Inc.
45 Urban Ave.
Westbury, New York, 11590-4834

Hubert Freund Woodworking Company Incorporated
589 Main St.
Westbury, New York, 11590

Korg U.S.A., Inc.
316 So. Service road
Melville, New York, 11747-3201

Huron Tool & Cutter Grinding, Co., Inc.
54 Island Pkwy N
Island Park, New York, 11558

Royal Guard Fence Co., Inc.
515 Bardini Dr
Melville, New York, 11747

Metpar Corp.
95 State St
Westbury, New York, 11590-5081

Blen-Cal Electronics Industrials, Inc.
120-22 231 ST.
Cambria Heights, New York, 11411

B&G Lighting
Currently doing business as Spectrum Signs, Inc.
71 Joyce Lane
Woodbury, New York, 11791

Utility Manufacturing Co., Inc.
700 Main St
Westbury, New York, 11590-5020

Avanel Industries, Inc.
121 Hopper St
Westbury, New York, 11590

Island Transportation Corporation
299 Edison Avenue
West Babylon, New York, 11704

Nest Equities, Inc.
700 Main Street
Westbury, New York 11590

OSRAM Sylvania Products, Inc.
Currently doing business as
OSRAM Sylvania, Inc.
200 Ballardvale Street
Wilmington, Massachusetts 01887

GTE Corporation
140 West Street
20th Floor
New York, New York 10007

FujiFilm North America Corporation
200 Summit Lake Drive
Valhalla, New York 10595

Anchor/Lith-Kem-Ko, Inc.
1300 Post Road East
Westport, Connecticut 06880

Vishay GSI, Inc.
150 Motor Parkway
Hauppauge, New York 11788

Air Techniques, Inc.
125 Walt Whitman Road
Melville, New York 11747-3062

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

------------------------------------------------------------------ X

HICKSVILLE WATER DISTRICT,

                    *Plaintiff,*

          - against -

JERRY SPIEGEL ASSOCIATES, INC., E-Z-EM, INC., ARKWIN INDUSTRIES, INC., 1ST STATE, LLC, TISHCON CORP., C&O REALTY CORP., WESTBURY JEEP, CHRYSLER, DODGE, INC., WILLIAM A. GROSS CONSTRUCTION ASSOCIATES, INC. GRAND MACHINERY EXCHANGE, INC., ADVANCE FOOD SERVICES EQUIPMENT, INC., currently doing business as ADVANCE TABCO, INC., IMC EASTERN CORPORATION, ALSY MANUFACTURING, currently doing business as EMESS MANUFACTURING, INC., LBA PROPERTIES, INC., MATCO SERVICE CORP., ADCHEM CORP, currently doing business as RPJ ENTERPRISES, INC., EFFICIENCY SYSTEMS CO., INC., HUBBERT FREUND WOODWORKING COMPANY INCORPORATED, KORG U.S.A. Inc., HURON TOOL & CUTTER GRINDING CO., INC., ROYAL GUARD FENCE CO., INC., METPAR CORP., BLEN-CAL ELECTRONICS INDUSTRIALS, INC., B&G LIGHTING, currently doing business as SPECTRUM SIGNS, INC., UTILITY MANUFACTURING CO., INC., AVANEL INDUSTRIES, INC., ISLAND TRANSPORTATION CORPORATION, NEST EQUITIES, OSRAM SYLVANIA PRODUCTS, INC., currently doing business as OSRAM SYLVANIA, INC., GTE CORPORATION, FUJIFILM NORTH AMERICA CORPORATION, ANCHOR/LITH-KEM-KO, INC., VISHAY GSI, INC., AIR TECHNIQUES, INC.,

                  *Defendants*.

------------------------------------------------------------------X

INDEX NO.:

Date Purchased:

Plaintiff designates NASSAU County as the place of trial

The basis of venue:
**Cause of Action Arose in Nassau County**

**COMPLAINT**
**JURY TRIAL DEMANDED**

       Plaintiff, Hicksville Water District (hereinafter referred to as the "District" or "Plaintiff"),

by and through their attorneys Napoli Shkolnik, PLLC, as and for their complaint against

Defendants, Jerry Spiegel Associates, Inc., E-Z-EM, Inc., Arkwin Industries, Inc., 1st State, LLC, Tishcon Corp., C&O Realty Corp., Westbury Jeep, Chrysler, Dodge, Inc., William A. Gross Construction Associates, Inc., Grand Machinery Exchange, Inc., Advance Food Services Equipment, Inc., currently doing business as Advance Tabco, Inc., IMC Eastern Corporation, Alsy Manufacturing, currently doing business as EMESS Manufacturing, Inc., LBA properties, Inc., MATCO Service Corp., ADCHEM Corp, currently doing business as RPJ Enterprises, Inc., Efficiency Systems co., Inc., Hubbert Freund Woodworking Company Incorporated, Korg U.S.A. Inc., Huron Tool & Cutter Grinding Co., Inc., Royal Guard Fence Co., Inc., METPAR Corp., Blen-Cal Electronics Industrials, Inc., B&G Lighting, currently doing business as Spectrum Signs, Inc., Utility Manufacturing Co., Inc., Avanel Industries, Inc., Island Transportation Corporation, Nest Equities, OSRAM Sylvania Products, Inc, currently doing business as OSRAM Sylvania Inc., GTE Corporation, FujiFilm North America Corporation, Anchor/Lith-Kem-Ko, Vishay GSI, Inc., Air Techniques, Inc. (hereinafter referred to as "Defendants") allege, upon information and belief, as follows:

## STATEMENT OF FACTS

1.     The Hicksville Water District brings this action against Defendants, for contamination of its water supply wells by 1,4-Dioxane.

2.     Plaintiff's wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1, 8-2, 8-3, 9-1, 9-2, 9-3,and 11-1 were contaminated by 1,4-Dioxane that was purchased, consumed, transported, used, processed, mixed, stored, handled and/or disposed of by Defendants and/or otherwise permitted to migrate from Defendant's properties.

3.     As used herein, the term "1,4-Dioxane", includes dioxane, dioxan, p-dioxane, diethylene dioxide, diethylene oxide, diethylene ether and glycol ethylene ether.

The Defendants knowingly and willfully purchased, consumed, transported, used, processed, mixed, stored, handled and/or disposed 1,4-Dioxane in industrial facilities in Nassau County when they knew or reasonable should have known that this harmful compound would inevitably reach groundwater, significantly pollute drinking water wells, render drinking water unusable and unsafe, and threaten the public health and welfare, as it has done and will come to do with respect of Plaintiff's impacted wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1,8-2, 8-3, 9-1, 9-2, 9-3, and 11-1.

4.       In 1978, the United States Environmental Protection Agency (EPA) designated the Long Island aquifer system as one of the first "sole source" aquifers in the country under the Safe Drinking Water Act, 42 U.S.C. §300h-3(e). A "sole source" aquifer is "an aquifer which is the sole or principal drinking water source for the area and which, if contaminated, would create a significant hazard to public health". The EPA observed that "[s]ince contamination of the ground-water aquifer can be difficult or impossible to reverse, contamination of the aquifer system underlying Nassau and Suffolk Counties, New York, would pose a significant hazard to those people dependent on the aquifer system for drinking purposes."

5.       Plaintiff currently maintains public drinking water supply wells for the benefit of its customers, including wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1,8-2, 8-3, 9-1, 9-2, 9-3, and 11-1. Plaintiff's wells draw from the Magothy aquifer beneath Nassau County to provide drinking water to about forty-eight thousand (48,000) of its customers.

6.       1,4-Dioxane has been detected in Plaintiff's aquifer system, and within its production wells.

7.       Because of Defendants' careless and negligent acts and omissions, 1,4-Dioxane has left their properties and contaminated the aquifer from which Plaintiff draws potable water and supplies water to its customers.

8.       As a direct result of Defendants' acts and omissions which are the sole and direct cause of the Plaintiff's injuries, the Hicksville Water District's production wells have become contaminated with 1,4-Dioxane from the release and/or releases of defendants' toxic and hazardous substance, thereby rendering the potable water unusable and unsafe for human consumption and daily use.

9.       As a direct result of Defendants' acts and omissions which are the sole and direct cause of Plaintiff's injuries, the District has suffered and incurred costs and will continue to incur costs related to the investigation and remediation of Defendants' contamination of Plaintiff's production wells.

10.      Plaintiff will incur additional costs to sample and treat their water for 1,4-Dioxane in order to comply with the rules, regulations and for the safety and expectations of its customers.

## BACKGROUND ON 1,4-DIOXANE

11.      1,4-Dioxane is a highly toxic substance and it is a synthetic industrial chemical.  It has been found to migrate considerably farther in groundwater than other solvents, due to the compound's complete miscibility and the absence of conditions that promote its biodegradation. When in water, 1,4-Dioxane does not respond to air stripping or granular activated carbon treatment.

12.      It has been used in many products, including paint strippers, dyes, greases, varnishes, solvents and waxes. 1,4-Dioxane is also found as an impurity in antifreeze and aircraft deicing fluids and in some consumer products, including deodorants, shampoos and cosmetics. 1,4-Dioxane was mainly used as a stabilizer for chlorinated solvents such as 1,1,1-Tricloroethane (TCA); a solvent for impregnating cellulose acetate membrane filters; a wetting and dispersing

agent in textile processes; and a laboratory cryoscopic solvent for molecular mass determinations and in Trichloroethylene (TCE), a degreaser for metal parts.

13.     1,4-Dioxane is classified by the EPA as "likely to be carcinogenic to humans" by all routes of exposure. Short-term exposure may cause eye, nose and throat irritation, and long-term exposure includes kidney and liver damage.  1,4-Dioxane is listed as No. 214 on the 2017 CERCLA Priority List of Hazardous Substances issued by the Agency for Toxic Substances and Disease Registry.

14.     1,4-Dioxane is short-lived in the atmosphere, but leaches readily from soil to groundwater, migrates rapidly in groundwater and is relatively resistant to biodegradation in the subsurface.

15.     MCLs are enforceable drinking water standards determined by weighing the costs of treating contaminated water against the adverse health effects of the chemical.

16.     The EPA regulates 1,4-Dioxane under the Clean Air Act (CAA), Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), Resource Conservation and Recovery Act (RCRA), and Superfund Amendments and Reauthorization Act (SARA). Neither the EPA nor the federal government have established an MCL for 1,4-Dioxane for drinking water, but have issued guidelines and health standards for it, establishing 0.35 ppb for cancer and 0.46 ppb for tap water. The New York State Department of Health (DOH) default standard is 50 ppb.

17.     In early 2016, New York State urged the EPA to acknowledge that 1,4- Dioxane contamination is a national problem that requires federal standards.

18.     On April 26, 2017, in response to growing public concern about drinking water pollution, Governor Andrew Cuomo signed the Clean Water Infrastructure Act, a $2.5 billion

investment in drinking water infrastructure and water quality protection across the state. The legislation requires all New York based water systems to test for 1,4-Dioxane contamination.

19.     In September 2017, Governor Cuomo appointed 12 members to a new Drinking Water Quality Council tasked with ensuring all New Yorkers have access to safe and clean drinking water. The Council's initial responsibility includes recommending an enforceable MCL for 1,4-Dioxane as a priority emerging contaminant that remains unregulated by the federal government. The members of the Council held meetings and received letters and recommendations from interest groups to comply with this mission.

20.     On December 18, 2018, the New York State Department of Environmental Conservation announced that Governor Cuomo's Drinking Water Quality Council recommended the MCL for 1,4-Dioxane to be set at 1.0 part per billion (ppb). The State of New York also approved an effective new treatment technology for 1,4-Dioxane called Advanced Oxidative Process (AOP), which is already being utilized by the Suffolk County Water Authority on Long Island.

21.     On July 8, 2019, Governor Cuomo announced that Dr. Howard Zucker, Commissioner of the Department of Health (DOH), had accepted the recommended 1,4-Dioxane MCL of 1.0 ppb. Following Dr. Zucker's decision, Governor Cuomo directed the DOH to begin the regulatory process for adopting this enforceable standard, which includes publishing a Notice of Proposed Rulemaking in the New York State Register and a 60-day public comment period.

22.     1,4-Dioxane contamination has been detected at Wells 1-4, 1-6, 4-2, 5-2, 5-3, 7-1, 8-2, 8-3, 9-1, 9-2, and 9-3 in levels that exceed and/or approach the 1ppb MCL, forcing Plaintiff to incur damages to install treatment on its supply wells.

23.     Monitoring tests results of July 2019, revealed the presence of 1,4-Dioxane in the above-mention wells, as follows:

a. Well 1-4: 13.30ppb

b. Well 1-6: 1.20ppb

c. Well 4-2: 34.00ppb

d. Well 5-2: 4.00ppb

e. Well 5-3: 2.10 ppb

f. Well 7-1: 1.1ppb

g. Well 8-2: 1.50ppb

h. Well 8-3: 1.40ppb

i. Well 9-1: 1.00 ppb

j. Well 9-2: 1.60ppb

k. Well 9-3: 1.10ppb

24. After the December 18, 2018 recommendation of the Water Quality Council to New York State 's health and environmental authorities to establish an MCL of 1.0 ppb, the District is obligated to take protective measures, which includes testing, and implementation of an AOP treatment system at all its operating supply wells.

25. Due to this contamination in drinking water supply wells described above, and of the aquifer, Plaintiff will be forced to implement extraordinary and costly measures to combat the contamination and to keep water potable.

26. The Defendants knew, or should have known, that 1,4-Dioxane and its degradation products and ingredients create a substantial risk of harm to groundwater and members of the public who consume such groundwater.

27. Defendants knew or should have known, that the 1,4- Dioxane they were distributing, purchasing, transporting, using, processing, mixing, storing, handling and/or disposing create a substantial risk of harm of contaminating the ground, soil, groundwater, the

aquifers and members of the public whose water supply originates with the groundwater, therefore, Plaintiff's water supply wells.

28.     Defendants negligently distributed, stored, transported, and/or disposed of, or willfully, wantonly, and intentionally spilled, disposed of, or otherwise permitted the release of 1,4-Dioxane from their properties as to cause severe contamination of ground, soil, groundwater, and/or aquifer, and/or said Defendants own or owned the properties upon which such actions and/or results occurred.

29.     Plaintiff is operating a public water system and has a duty to exercise due care and diligence in the maintenance and supervision of all sources of the public water systems to prevent its pollution and depletion, pursuant to 10 NYCRR § 5-1.71.

30.     Plaintiff is operating a public water system and as a supplier of water has a duty to take the necessary steps to ensure the protection of the public health, including the undertaking of remedial feasibility studies and the installation of a suitable treatment process, pursuant to 10 NYCRR § 5-1.51.

31.     As a direct result of Defendants' careless and negligent acts and omissions 1,4-Dixoane percolated the soil and reached the aquifer from which Plaintiff draws potable water to supply its customers.

32.     As a direct result of Defendants' acts and omissions, which are the sole and direct cause of Plaintiff's injuries, Plaintiff's Plant 5 has become contaminated from the release and/or releases of Defendants' toxic and hazardous substances thereby rendering the aquifer from which Plaintiff draws it potable water unusable without extensive and expensive treatment.

33.     Plaintiff seeks to: (a) recover damages for, among other things, investigation costs, testing costs, treatment costs, and operating and maintenance costs, among other

compensatory damages, and (b) ensure that the Defendants, as the responsible parties - and not Plaintiff or its customers - bear all costs.

34.     Plaintiff asserts claims for: (a) public nuisance; (b) negligence; (c) failure to warn; (d) trespass; (f) private nuisance; and (g) punitive damages.

## **THE PARTIES**

35.     **The Hicksville Water District** is a water district supplying potable water to over 48,000 residents and customers in the exercise of its powers, duties and responsibilities as a local governmental entity.

36.     Plaintiff has been providing potable water to Hicksville residents for over seventy-five (75) years.

37.     Plaintiff operates fourteen (14) municipal potable water supply wells, including 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1, 8-2, 8-3, 9-1, 9-2, 9-3, and 11-1, located at 120 Stewart Avenue, Hicksville New York, which have been contaminated with 1,4-Dioxane.

38.     In carrying out its powers, purposes and duties, the District is acting in all respects for the benefit of the people of the Hicksville Water District, for the protection of their health, welfare and prosperity, as mandated by applicable laws and regulations.

39.     At all times relevant to this litigation, Defendants did business in New York as suppliers, consumers, users, handlers and/ or disposers of 1,4-Dioxane and/or other fluids containing 1,4-Dioxane and/or said Defendants own or owned the properties upon which such actions and/or results occurred and from which 1,4-Dixoane was permitted to migrate from and impact Plaintiff's wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1,8-2, 8-3, 9-1, 9-2, 9-3, and 11-1.

40.     At all times relevant to this litigation, Defendants supplied, consumed, used, handled or disposed 1,4-Dioxane, such that each Defendant knew or should have known that 1,4-Dioxane would be reached and contaminate areas containing Plaintiff's water supply wells.

41.     At all times relevant to this litigation, Defendants were legally responsible for and committed each of the tortious and wrongful acts alleged in this Complaint.

42.     Any and all references to a Defendant or Defendants in this Complaint include any and all predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

43.     When the term "Defendants" is used alone, it refers to all Defendants named herein jointly and severally.

44.     When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

45.     **Defendant Jerry Spiegel Associates, Inc.** was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in Jericho, New York.

46.     Defendant Jerry Spiegel Associates, Inc.'s line of business includes renting, buying, selling, and appraising real estate. Defendant's actions, omissions and operations in the Former Autoline Automotive Corp. Site have contaminated Plaintiff's wells 4-2, 5-2, 5-3, and 6-1.

47.     Defendant Jerry Spiegel Associates, Inc. is located in the Former Autoline Automotive Corp. site in 101 Frost Street, Westbury, Nassau, New York, a State Superfund Site, which is currently used to manufacture stone countertops. Former tenants, Autoline Automotive Corporation and National Bassen Textiles used degreasers and unknown chemicals. Two dry wells/cesspools are believed to have existed in the western portion of the site. Downgradient

concentrations of tetrachloroethylene (PCE) and 1,1,1-trichloroethane (TCA) were higher than upgradient concentrations of these chemicals.

48.     **Defendant E-Z-EM, Inc.** is a Delaware corporation with its principal place of business located in Lake Success, New York, which at all times relevant to this action was doing business in New York.

49.     Defendant E-Z-EM, Inc. provides medical products used by radiologists, gastroenterologists, and speech-language pathologists in screening for and diagnosing diseases and disorders of the GI tract. The company offers injectors and peripherals, and CT oral contrast for imaging applications. Defendant's actions, omissions and operations in the E-Z-EM Site have contaminated Plaintiff's wells 4-2, 5-2 and 5-3.

50.     The E-Z-EM site in 750 Summa Avenue North Hempstead, Nassau County, is a State Superfund Site and has been located in the New Cassel Industrial Area since 1982. E-Z-EM, Inc. is its current owner.  Advance Food Service Equipment Manufacturing, a stainless-steel kitchen equipment supplier, occupied the site between 1968 and 1971 and it stored or used 1,1,1, trichloroethane (TCA) and other solvents at the site.

51.     **Defendant Arkwin Industries, Inc.** was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in Westbury, New York.

52.     Defendant Arkwin Industries, Inc. designs, engineers, manufactures, and supports hydraulic and fuel system components for commercial aerospace, defense, maritime, and industrial markets. Its products are used fixed-wing aircraft, helicopters, spacecraft, turbine engines, and other applications. Defendant's actions, omissions and operations in the Arkwin Industries Site have contaminated Plaintiff's wells 4-2, 5-2, 5-3,8-1,8-3, 9-1, 9-2, and 9-3.

53.     The Arkwin Industries site in 648-656, 662-670 Main Street, and 66 Brooklyn Avenue in Nassau, New York, a State Superfund Site, includes several individual lots located in the central part of the New Cassel Industrial Area and it is used in the construction of metal components.  It is currently owned by Arkwin Industries, Inc. Arkwin receives metal stock which is then machined, fabricated, degreased, polished, painted and assembled into finished products. It used 1,1,1-tricloroethane (TCA), tetrachloroethene (PERC), and other solvents in their production process that included 1,4-Dioxane.

54.     **Defendant 1st State, LLC** was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in Westbury, New York.

55.     Defendant 1st State, LLC is the owner of the Tishcon Corporation Site located at 125 State Street in the central part of the New Cassel Industrial Area. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's wells 5-2, and 5-3.

56.     Defendant **Tishcon Corp.** is a duly organized domestic business corporation in the State of New York, with its principal place of business located in Westbury, New York. Defendant Tishcon Corporation line of business is soft-gel encapsulation, research and development laboratories, and quality control testing laboratories.  Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's wells 4-2, 5-2, 5-3, 8-1, 8-3, 9-1, 9-2, and 9-3.

57.     Defendant Tishcon Corporation operates the Tishcon Corporation Site located at 125 State Street, the one in 31-33 Brooklyn Avenue, as well as the 30-36 New York Avenue one in the central part of the New Cassel Industrial Area.

58.     Defendant **C&O Realty Corp.** is a duly organized domestic business corporation in the State of New York, with is principal place of business located in Wantagh, New York. In 1986, C&O Realty Corp. leased and then bought the 125 State Street Site from Tishcon Corp. After they bought it, Tishcon Corp. leased the Site and remained as its operator. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's wells 5-2, and 5-3.

59.     The Tishcon Corporation sites are State Superfund Sites. Tishcon Corporation was a tenant from 1984 to 1996 and as part of their gelatin capsule manufacturing process, it used 1,1,1-tricloroethane (TCA) that contained 1,4-Dioxane to remove mineral oil from the gelatin capsules. Equipment used in the process was rinsed out in the driveway where the storm drains are located.

60.     Defendant **Westbury Jeep Chrysler Dodge, Inc.** is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in Syosset, New York.

61.     Defendant Westbury Jeep Chrysler Dodge, Inc. operates a dealership for service to automobiles at the New Cassel Industrial Area Site between Old Country Road and Railroad Tracks, New Cassel, New York 11590.  Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's wells 4-2,5-2, and 5-3.

62.     The New Cassel Industrial Area Site between Old Country Road and Railroad Tracks is a State Superfund Site in a heavily developed industrial and commercial area.  Past site operations have contaminated the groundwater beneath the sites with chlorinated solvents. Groundwater contamination plumes have migrated over 1,000 feet downgradient of the New Cassel Industrial Area with contaminant concentrations exceeding 1,000 ppt of total VOCs.

63.    **Defendant William A. Gross Construction Associates, Inc.**, is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in New Hyde Park, New York.

64.    Defendant William A. Gross Construction Associates, Inc. provides construction services. The Company constructs parks, golf course, ponds, basketball and tennis court, running tracks, fencing, walkways, parking lots, and environmental projects. William A. Gross Construction Associates serves customers in the United States. Defendant's actions, omissions and operations in the Tishcon Corp. site have contaminated Plaintiff's wells, 4-2, 5-2, 5-3, 8-1, 8-3, 9-1, 9-2, and 9-3.

65.    Defendant William A. Gross Construction Associates, Inc., was the operator of the Tishcon Corp. Site at 125 State Street in the New Cassel Industrial Area.

66.    The Tishcon Corp. site is a State Superfund Site and it is located at 125 State Street in the central part of the New Cassel Industrial Area. The site is zoned Commercial/Industrial. Tishcon Corporation was a tenant in this location from 1984 to 1996. As part of their gelatin capsule manufacturing process, the Tishcon Corporation used 1,1,1-trichloroethane (1,1,1 -TCA) that contained 1,4-Dioxane to remove mineral oil from the gelatin capsules. Equipment used in the process was rinsed out in the driveway where the storm drains are located.

67.    **Defendant Grand Machinery Exchange, Inc.**, was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in Westbury, New York.

68.    Defendant Grand Machinery Exchange, Inc. is a durable goods wholesale, industrial machinery and equipment company. Defendant's actions, omissions and operations in

the 36 Sylvester Street Site have contaminated Plaintiff's wells 4-2, 5-2, 5-3, 8-1, 8-3, 9-1, 9-2, and 9-3.

69.     The 36 Sylvester Street Site in 36 Sylvester Street North Hempstead, Nassau, New York, where Grand Machinery Exchange is located, a State Superfund Site, is in the New Cassel Industrial Area. Grand Machinery Express is its current owner.  It is operated by Gel-TEC and formerly by National Gear Products. Groundwater samples collected from a leaching pool on the property exhibited high concentrations of 1,1,1-trichloroethane (TCA). The solvent contamination would have also included 1,4-Dioxane.

70.     **Defendant Advance Food Services Equipment, Inc,** currently doing business as **Advance Tabco, Inc**. (hereinafter "Tabco"), was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in Edgewood, New York.

71.     Defendant Tabco, manufactures and supplies stainless steel kitchen equipment for the foodservice industry. The company also offers its products for plumbing, clean room, pharmaceutical laboratories, and material handling markets. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's wells 4-2, 5-2, and 5-3.

72.     Tabco is located in the New Cassel Industrial Area Site between Old Country Road and Railroad Tracks, New Cassel, Nassau, New York, and it is currently one of its owners.  It is a State Superfund Site, and it is a heavily developed industrial and commercial area. Past site operations have contaminated the groundwater beneath the site with chlorinated solvents, including but not limited to 1,4-Dioxane.

73.     **Defendant IMC Eastern Corp.**, formerly known as IMC Magnetics Corporation, was and is a duly organized domestic business corporation authorized to do business in the State of New York, with its principal place of business located in Chatsworth, California.

74.     Defendant IMC Eastern Corp. engages in the design, development, and manufacture of solenoids, solenoid valves, fans, and electric motors for automotive, industrial, power generation, mounting, fluid, and pressure applications. Defendant's actions, omissions and operations in the IMC Magnetics Site have contaminated Plaintiff's wells 4-2, 5-2, and 5-3.

75.     The IMC Magnetics site is in 570 Main St. in the western part of the New Cassel Industrial Area, and it is a State Superfund Site.  Currently it houses an autobody repair business and office space. The site was occupied by IMC Magnetics, Inc. from the early 1950s until 1992. Products made during that time included induction motors, fans and blowers, stepper motors and other rotating machines. Soils and groundwater at the site are contaminated with chlorinated hydrocarbons and, petroleum hydrocarbons and 1,4-Dioxane.

76.     **Defendant Alsy Manufacturing**, currently doing business as **EMESS Manufacturing, Inc.**, was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in New York City.

77.     Defendant Alsy Manufacturing. manufactured electric lamps and lampshades. Defendant's actions, omissions and operations in the Alsy Manufacturing Site have contaminated Plaintiff's well 4-2.

78.     **Defendant LBA Properties, Inc**. was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business in Staten Island, New York.

79.     Defendant LBA Properties, Inc. provides top-quality development and management services to the hospitality industry. Defendant's actions, omissions and operations in the Alsy Manufacturing Site have contaminated Plaintiff's well 4-2.

80.     **Defendant MATCO Service Corp**. was and is duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business in Carle Place, New York.

81.     Defendant MATCO Service Corp. provides services for commercial properties. Their services include design, engineering, installation and maintenance of commercial HVAC systems. MATCO Service Corp's actions, omissions and operations in the Alsy Manufacturing Site have contaminated Plaintiff's well 4-2.

82.     The Alsy Manufacturing site, a State Superfund Site, is located at 270/280 Duffy Avenue, Hicksville, New York.  Prior to 1975, Metlab, a laboratory furniture manufacturer, conducted operations at the Site. ALSY's manufacturing processes included bronze plating, electroplating, and antiquing.  Waste material that was generated included metals plating waste, wastewater treatment sludge, paint thinner, acidic paint stripper, alkaline paint stripper, and 1,1,1-trichloethante. The solvent contamination would have also included 1,4-Dioxane.

83.     **Defendant ADCHEM Corp**, currently doing business as **RPJ Enterprises, Inc**., was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in Riverhead, New York.

84.     Defendant ADCHEM Corp. engineers and manufactures pressure sensitive adhesive tape systems.  It offers films, tissues, foams, and fabrics, transfer tapes, one-side coated products, and solids adhesives, solvent and water-based acrylics, and rubber adhesives. Defendant's actions, omissions and operations in the 89 Frost Site have contaminated Plaintiff's well 4-2.

85.     Defendant ADCHEM Corp occupied the 89 Frost Street Site, located at 89 Frost Street North Hempstead, New York, from 1980 to 1987, and it has a documented history of VOC usage at its facilities in the New Cassel Industrial Area.  Two dry wells /cesspools existed in the western portion of this site and one in the eastern portion.   Downgradient groundwater concentrations of tetrachlorehylene, 1,1,1-trichloroethane and related compounds were higher than upgradient concentrations of these chemicals. This contamination would have also included 1,4-Dioxane.

86.     **Defendant Efficiency Systems Co., Inc**. was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in Westbury, New York.

87.     Defendant Efficiency Systems Co, Inc. supplies a wide range of storage racks, including drive-in racks and cantilever racks as well as new and used pallet racks.  They also provide wire decks, ball and roller decks, slave pallets, plus hand and electric dumbwaiters and specialize in turnkey air cargo handling systems for airlines and freight forwarders. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's well 4-2.

88.     **Defendant Hubert Freund Woodworking Company Incorporated** was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business in Westbury, New York.

89.     Defendant Hubert Freund Woodworking Company Incorporated specializes in wood office furniture. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's well 4-2.

90.     **Defendant Korg U.S.A. Inc.** is a Delaware corporation authorized to do business in the State of New York, with its principal place of business located in Melville, New York.

91.     Defendant Korg U.S.A. Inc. provides musical instruments.  The company offers keyboards, computer gear and software, drums percussions, turners, digital pianos, amplifies, and other accessories. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's well 4-2.

92.     **Defendant Huron Tool & Cutter Grinding Co., Inc**. was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in Island Park, New York.

93.     Defendant Huron Tool & Cutter Grinding Co., Inc. line of business is the manufacture of orthopedic and arthroscopic cutting tools and instruments. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's well 4-2.

94.     **Defendant Royal Guard Fence Co., Inc**. was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in Melville, New York.

95.     Defendant Royal Guard Fence Co., Inc. line of business includes providing special trade contracting services. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's well 4-2.

96.     **Defendant Metpar Corp**. was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business located in Westbury, New York.

97.     Defendant Metpar Corp. manufactures restroom partitions.  The Company offers toilet partitions, shower stalls, urinal screens, dressing compartments, restroom partition hardware, and other materials.  Metpar serves designers, architects, and builders worldwide.

Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's well 4-2.

98.     **Defendant Blen-Cal Electronics Industrials, Inc.** was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business in Cambria Heights in New York.

99.     Defendant Blen-Cal Electronics Industrials, Inc. line of business is electronic equipment supplies and dealers. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's well 4-2.

100.     **Defendant B&G Lighting**, currently doing business as **Spectrum Signs, Inc**., was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business in Lane Woodbury, New York.

101.     Defendant Spectrum Signs, Inc. line of business includes manufacturing signs and advertising specialties. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's well 4-2.

102.     **Defendant Utility Manufacturing Co. Inc.** was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business in Westbury, New York. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's well 4-2.

103.     Defendant Utility Manufacturing Co. Inc. manufactures chemical preparations. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's wells 4-2, 8-1, 8-2, 8-3, 9-1, 9-2 and 9-3.

104.     **Defendant Avanel Industries, Inc**. was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business in Westbury, New York.

105.    Defendant Avanel Industries, Inc. manufactures instruments used to measure electricity and electrical signals. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's well 4-2.

106.    **Defendant Island Transportation Corporation** was and is a duly organized domestic corporation authorized to do business in New York, with its principal place of business in West Babylon, New York.

107.    Defendant Island Transportation Corporation provides trucking transportation services. Defendant's actions, omissions and operations in the New Cassel Industrial Area Site have contaminated Plaintiff's well 4-2.

108.    The aforementioned Defendants businesses and operations are associated within the New Cassel Industrial Area site, a Federal Superfund Site, which consists of a groundwater contamination plume located beneath a mixed-used area.  Hicksville's Plant 5 public water supply well fields draw from the groundwater prior to distribution. The groundwater contamination in this site originates from several sites within the New Cassel Industrial Area, the General Instruments site, the Former Sylvania Site, and other upgradient properties. The primary contaminants of concern found are tetrachloroethylene (PCE), trichloroethylene (TCE) and their breakdown products. This contamination would have also included 1,4-Dioxane.

109.    **Defendant Nest Equities, Inc.** was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business in Westbury, New York.

110.    Defendant Nest Equities Inc. line of business includes renting, buying, selling and appraising real estate. Defendant's actions, omissions and operations in the New Cassel/ Hicksville Groundwater Contamination Site have contaminated Plaintiff's wells 4-2, 8-1, 8-2, 8-3, 9-1, 9-2 and 9-3.

111. The aforementioned Defendants businesses and operations are associated within the New Cassel/Hicksville Groundwater Contamination site, a State Superfund Site, which is considered to be an area of widespread groundwater contamination within the Nassau County. Tests performed in the area by the EPA determined the presence of volatile organic compounds, including 1,4-Dioxane, above the MCL in six of Plaintiff's wells (4-2, 5-2, 5-3, 8-1, 8-3, and 9-3).

112. **Defendant OSRAM Sylvania Products, Inc.,** currently doing business as **OSRAM Sylvania, Inc**. is a Delaware corporation authorized to do business in the State of New York, with its principal place of business located in 200 Ballardvale Street, Wilmington, Massachusetts, 01887.

113. Defendant OSRAM Sylvania, Inc. designs and manufactures lighting products. It produces a range of fluorescent, halogen, and solid-state bulbs, as well as fixtures, displays and specialty lighting products. Defendant's actions, omissions and operations in the 70-140 Cantiague Rock Road/Former Sylvania Site have contaminated Plaintiff's well 4-2.

114. **Defendant GTE Corporation** was a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business in New York City.

115. Defendant GTE Corporation provides telecommunication and Internet service. Defendant's actions, omissions and operations in the 70-140 Cantiague Rock Road/Former Sylvania Site have contaminated Plaintiff's well 4-2.

116. The aforementioned Defendants owned and/or operated, in Plaintiff's water district, a nuclear materials processing facility in the 70-140 Cantiague Rock RD/Former Sylvania Site, a State Superfund Site, located at 70-140 Cantiague Rock Road, Hicksville, New York. This site has been used for a variety of commercial and industrial activities including the manufacture of nuclear fuel elements for research and electric power generation reactors. Primary contaminants in soil and groundwater included tetrachlorethene, trichloroethene, and their breakdown products. It would have also included 1,4-Dioxane.

117.    **Defendant FujiFilm North America Corporation** was and is a duly organized domestic corporation authorized to do business in the State of New York, with its principal place of business in Valhalla, New York.

118.    Defendant FujiFilm North America Corporation develops, manufactures, and sells digital and analog photographic imaging systems.  It also offers video systems, endoscopes, peripherals, ultrasound system, and electronic medical records to medical, graphic arts, optics, enterprise storage, motion picture, and photography industries. Defendant's actions, omissions and operations in the Anchor Chemicals Site have contaminated Plaintiff's wells 4-2 and 6-1.

119.    The Anchor Chemicals site, located at 500 West John Street, Hicksville, New York, is a Federal Superfund Site, where chemicals were stored above and below the ground; 17 underground storage tanks ranging in capacity from 550 to 4,000 gallons lie beneath the concrete floor of the building.  Tests performed in the area revealed that subsurface soil and groundwater were contaminated with chlorinated organics, lead, chromium and volatile organic compounds, including 1,4-Dioxane.

120.    **Defendant Anchor/Lith-Kem-Ko, Inc.** was a duly organized domestic corporation authorized to do business in New York, with its principal place of business in Westport, Connecticut.

121.    Defendant Anchor/Lith-Kem-Ko, Inc. specializes in chemicals and chemical preparations.  Defendant's actions, omissions and operations in the Anchor Lith Kem Ko (Anchor Chem) Site have contaminated Plaintiff's wells 4-2 and 6-1.

122.    The Anchor Lith Kem Ko (Anchor Chem), located at 500 West John Street, Hicksville, New York, is a State Superfund Site, which contamination is attributed to the building's past use as a chemical blending and packaging operation.  Chemicals used during the operation included acetone, 1-1-1-trichloroehtane (TCA), including 1,4- Dioxane, methylene chloride, 2-butoxyethanol, isopropyl alcohol, lead and chromium that contaminated the soil and the

groundwater.

123.    **Defendant Vishay GSI, Inc.** is a Delaware corporation authorized to do business in New York, with its principal place of business in Hauppauge, New York.

124.    Defendant Vishay GSI, Inc. provides components for macroeconomic growth drivers such as connectivity (support power management, wireless connectivity, display interface, and touch screen controls), mobility (support a wide range of functions in electric power steering) and sustainability (support the new generation of factory automation to enable robots with position sensors and encoders, etc.). Defendant's actions, omissions and operations in the General Instruments Corp. Site have contaminated Plaintiff's well 4-2.

125.    The General Instruments Corp. site, a State Superfund Site, is located at 600 West John Street, Hicksville, New York, in which prior uses of a variety of solvents and acids during the production of microelectronic components have led to site and groundwater contamination. The effluent from production was discharged into a waste lagoon and drywells. On-Site soils and groundwater revealed chlorinated and petroleum volatile organic compounds (VOCs), including tetrachloroethene, trichloroethene, 1-2-diclorobenzene, ethylbenzene, xylene, vinyl chloride contamination. It would have also included 1,4-Dioxane.

126.    **Defendant Air Techniques, Inc.** was and is a duly organized domestic corporation authorized to do business in New York, with its principal place of business in Melville, New York.

127.    Defendant Air Techniques, Inc. manufactures dental products.  The Company offers air compressors, vacuum systems, separators, digital imaging systems, film processors, and accessories. Defendant's actions, omissions and operations in the Air Techniques (Old Sylvania) Site have contaminated Plaintiff's wells 4-2, 5-2, 5-3, and 6-1.

128.    The Air Techniques (Old Sylvania) Site, a State Superfund Site, is located along 70 Cantiague Rock Road in Hicksville, New York. This site was occupied by a manufacturer of dental

equipment from 1979 to 2006. During that period, buried drums containing waste chlorinated solvents consisting primarily of tetrachloroethene were discovered in 1986 and were removed in 1987. After some additional investigation activities conducted between 1992 and 1994, additional parcels north and upgradient of 70 Cantiague Rock Road were evaluated. It was discovered that the 70, 100, and 140 Cantiague Rock Road parcels had all been used for the production of uranium and thorium fuel elements in the 1950s and 1960s by Sylvania. Portions of this nuclear fuel work was done for the US government under federal contract. Uranium, thorium, tetrachloroethene (including 1,4-Dioxane), and nickel present in the processing waste had been discharged to recharge basins and leaching pools.

129.    Defendants' actions, omissions and/or operations involved the use of a variety of solvents and acids, which resulted in the discharge of 1,4-Dioxane onto and from their properties, which have been released upon, or into, or otherwise threaten to be released upon or into the aquifer system from which Plaintiff's wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 8-2, 8-3, 9-1, 9-2, 9-3, and 11-1 draw its potable water supply.

130.    All Defendants own or owned properties that are emanating 1,4-Dioxane into the aquifer, thus adversely impacting Plaintiff's production wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1, 8-2, 8-3, 9-1, 9-2, 9-3, and 11-1.

131.    Upon information and belief, each of the Defendants are responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiff, as alleged, either through each defendant's own conduct or through the conduct of its agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

## VENUE

132.    This case is properly venued in this Court pursuant to CPLR 503(a), due to the

residence of Plaintiff, and pursuant to CPLR 507, because the judgement demanded would affect

the possession, use or enjoyment of real property situated in the County of Nassau. The actions,

injuries, and damages alleged herein also occurred in Nassau County, New York.

## JURISDICTION

133.    This Court has personal jurisdiction over the Defendants as each of them are

doing business in New York and/or own property in New York such that it is reasonably

foreseeable that they would be subject to the jurisdiction of the courts of this State.

134.    This Court has long-arm jurisdiction over Defendants because the cause of action

arises out of transaction of business within New York causing injury in New York.

135.    This Court has long-arm jurisdiction over Defendants because the cause of action

arises from the commission of tortious acts within New York causing injury in New York.

136.    This Court has long-arm jurisdiction over Defendants because the cause of action

arises out of the ownership, use or possession of real property situated in New York State.

## AS AND FOR A FIRST CAUSE OF ACTION: PUBLIC NUISANCE

137.    Plaintiff realleges and reaffirms each and every allegation set forth in all

preceding paragraphs as if fully restated herein.

138.    Defendants have purchased, transported, used, processed, mixed, stored, handled

and/or disposed of 1,4-Dioxane and/or own properties from which 1,4-Dioxane has been and

continues to be released from, in a manner that created a public nuisance and that unreasonable

endangers or injures the property, health, safety and comfort of the general public and Plaintiff,

causing inconvenience and annoyance.

139.    Defendants, by their negligent, reckless and willful acts and omissions set forth above, have, among other things, unleashed massive, long-lasting and still spreading 1,4-Dioxane, contamination of groundwater and drinking water wells. This contamination has migrated into the aquifer from which Plaintiff draws its water for wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2,7-1, 8-2, 8-3, 9-1, 9-2, 9-3 and 11-1.

140.    By their conduct, Defendants violated and/or endangered the public right to pure drinking water as well as a clean and unpolluted natural environment, including reserves of unpolluted groundwater.

141.    Defendants' conduct has also injured the property, health, safety and/or comfort of a considerable number of persons.

142.    1,4-Dioxane, both real and immediate, constitutes a current existing, as well as prospective, public nuisance.

143.    As owners of water production wells and purveyors of drinking water, Plaintiff suffers injuries different in kind from the community at large precisely because it relies upon production wells for its functions.

144.    Plaintiff's production wells are entirely dependent upon groundwater.

145.    Plaintiff's special injuries therefore include: investigative costs, additional testing costs, treatment costs, attorney fees and costs, and loss of water production capacity, loss of consumer confidence arising out of the increasingly widespread public perception- based on actual fact- that the underground aquifers, groundwater and well water have been rendered less certain, safe and reliable than the other sources of water.

146.    Defendants knew or, in the exercise of reasonable care, should have known that the release of 1,4-Dioxane, into the subsurface would and has unreasonably and seriously endangered, injured and interfered with the ordinary comfort, use and enjoyment of vital

groundwater resources relied upon by Plaintiff and the public.

147.     As a direct and proximate result of Defendants' acts and omissions creating the above-described nuisance, Plaintiff has suffered injuries common to the public at large and additional special injuries from actual and threatened contamination of groundwater supplying Plaintiff's production wells, as described above.

148.     As a direct result of the foregoing, Plaintiff seeks compensatory damages in a sum to be determined by a jury at the time of trial.  Upon information and belief, said amount exceeds the jurisdictional limits of all of the lower courts.

### AS AND FOR A SECOND CAUSE OF ACTION: NEGLIGENCE

149.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

150.     Defendants failed to employ reasonable care which a reasonably prudent person should use under the circumstances by purchasing, transporting, using, processing, mixing, storing, handling and/or disposing of 1,4-Dioxane, and/or own properties from which 1,4-Dioxane has been and continues to be released, in a way that permit its release into the soil and groundwater that contaminated Plaintiff's wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1,8-2, 8-3, 9-1, 9-2, 9-3, and 11-1.

151.     Defendants owed Plaintiff a cognizable duty to exercise reasonable care in the purchasing, transporting, using, processing, mixing, storing, handling and/or disposing of 1,4-Dioxane and/or in owning property that is contaminated with 1,4-Dioxane and failing to take reasonable measures to prevent its release and spread into the aquifer and into Plaintiff's supply wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1,8-2, 8-3, 9-1, 9-2, 9-3, and 11-1.

152.     Upon learning of a release of certain VOCs, including but not limited to TCA, PERC, TCE, that contained 1,4-Dioxane, Defendants owed Plaintiff a duty to act reasonably to

remediate, contain, and eliminate the release before it contaminated the aquifer and reached Plaintiff's supply wells.

153.    Defendants breached that duty by failing to act reasonably in the purchasing, transporting, using, processing, mixing, storing, handling and/or disposing of 1,4-Dioxane. Further, Defendants failed to take reasonable, adequate and sufficient steps or actions to eliminate, correct, or remedy a release of 1,4-Dioxane after it occurred.

154.    Upon learning of the release of 1,4-Dioxane, Defendants owed Plaintiff a duty to timely notify Plaintiff that the aforementioned release in the vicinity of Defendants' properties had occurred.

155.    Defendants breached that duty by failing to timely notify Plaintiff of any releases of 1,4-Dioxane, into the environment in the vicinity of Defendant's properties, and consequently, in the vicinity of Plaintiff's production wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1,8-2, 8-3, 9-1, 9-2, 9-3, and 11-1.

156.    As a result of Defendants' breaches of their duty to timely notify Plaintiff, Plaintiff was forestalled from undertaking effective and immediate remedial measures.

157.    As a result of Defendant's breaches of their duty to timely notify Plaintiff, Plaintiff has expended and/or will be forced to expend and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendant's negligence for many years into the future.

158.    Defendants breached their duties to Plaintiff to ensure that their purchasing, transporting, using, processing, mixing, storing, handling and/or disposing of 1,4-Dioxane, was carried out in a safe sufficiently secure manner so as to prevent the release of 1,4-Dioxane, into the environment surrounding their facilities and, consequently, Plaintiff's supply wells.

159.    Defendants' breach of their duties was the direct, sole and proximate cause of

Plaintiff's damages.

160.    As a direct result of the foregoing, Plaintiff seeks compensatory damages in a sum to be determined by a jury at the time of trial. Upon information and belief, said amount exceeds the jurisdictional limits of all of the lower courts.

### AS AND FOR A THIRD CAUSE OF ACTION: FAILURE TO WARN

161.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

162.    Defendants failed to employ reasonable care which a reasonable prudent person should use under the circumstances by purchasing, transporting, using, processing, mixing, storing, handling and/or disposing of 1,4-Dioxane, in a way permitting its release into the soil and groundwater.

163.    Defendants owed Plaintiff a cognizable duty to exercise reasonable care in the purchasing, transporting, using, processing, mixing, storing, handling and/or disposing of 1,4-Dioxane.

164.    Upon learning of a release of 1,4-Dioxane, Defendants owed Plaintiff a duty to act reasonably to remediate, contain, and eliminate the release before it contaminated the aquifer and reached Plaintiff's supply wells.

165.    Defendants owed Plaintiff and its customers a duty to warn Plaintiff that the aforementioned release in the vicinity of Defendants' properties occurred or might occur.

166.    Defendants breached that duty by failing to warn Plaintiff of the likelihood of release of 1,4-Dioxane, in the vicinity of Defendants' facilities, and, consequently, in the vicinity of Plaintiff's wells.

167.    As a result of Defendants' breaches of their duty to warn Plaintiff, Plaintiff was forestalled from undertaking effective and immediate remedial measures and Plaintiff has

expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

168.    As a direct and proximate result of Defendants' above-described failure to provide warnings, 1,4-Dioxane, at all times relevant to this litigation have:

a.    Contaminated the groundwater and Plaintiff's production wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1, 8-2, 8-3, 9-1, 9-2, 9-3, and 11-1;

b.    Required and/or will require additional testing and monitoring of the groundwater, aquifer system and Plaintiff's production wells for 1,4-Dioxane, contamination.

c.    Contaminated and/or will contaminate the groundwater, aquifer system and Plaintiff's production wells or groundwater in the vicinity of Plaintiff's wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1,8-2, 8-3, 9-1, 9-2, 9-3, and 11-1;

d.    Raise the need to develop a comprehensive vulnerability study for Plaintiff's wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1,8-2, 8-3, 9-1, 9-2, 9-3, and 11-1 capture zone;

e.    Require treatment for 1,4-Dioxane, groundwater contamination including installation of a system to remove 1,4-Dioxane to safe level of non-detect;

f.    Diminished and will continue to diminish consumer confidence in Plaintiff's water;

g.    Among other compensatory damages.

h.    As a direct result of the foregoing, Plaintiff seeks compensatory damages in a sum to be determined by a jury at the time of trial. Upon information and belief, said amount exceeds the jurisdictional limits of all of the lower courts.

## AS AND FOR A FOURTH CAUSE OF ACTION: TRESPASS

169.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

170.    Defendants' negligent, reckless, willful and/or wanton actions and/or intentional failures to act caused 1,4-Dioxane, to be spilled, disposed of, or otherwise released into the ground, soil, groundwater, and aquifer on Defendants' real property.

171.    Defendants' willful, wanton, and intentional failure to act and/or their affirmative

choice of action and result of following their course of action caused 1,4-Dioxane, to enter and trespass upon the land and reality of Plaintiff and cause an injury to their possession and/or right of possession.

172.     Defendants took affirmative, reckless, voluntary, and intentional actions to store and/or dispose of 1,4-Dioxane, improperly and in violation of applicable rules, regulations, law, statutes, guidelines.

173.     Further, after such acts, Defendants undertook affirmative, reckless, voluntary, and intentional acts that were insufficient to remedy the condition caused by the release of 1-4, Dioxane.

174.     At the time the above described affirmative, voluntary, and intentional acts were performed, Defendants had good reason to know or expect that 1,4-Dioxane, would pass through the soil, groundwater, and aquifer under Defendants' land to Plaintiff's supply wells.

175.     The above-described affirmative, voluntary, and intentional acts were performed with the willful intent to cause 1,4-Dioxane to be disbursed through the soil, groundwater, and aquifer under Defendants' land to Plaintiffs' supply wells.

176.     These voluntary actions resulted in the immediate and continued trespass, injury and damage to Plaintiff, its public supply wells and its right of possession to clean, uncontaminated drinking water for its customers.

177.     Further, Defendants' actions in disposing of 1,4-Dioxane into the ground were done with actual malice, and in wanton and willful and/or reckless disregard for Plaintiff's customers' rights, health and property.

178.     Additionally, and/or alternatively, Defendants, decision to delay and the resulting delay in taking any affirmative action to eliminate, correct, and/or remedy the contamination of the soil, groundwater, and aquifer on their properties after having knowledge and notice of said

contamination were done with actual malice, and in wanton and willful and/or reckless disregard for Plaintiff's customers' rights, health and property.

179.    As a direct result of the foregoing, Plaintiff seeks compensatory damages in a sum to be determined by a jury at the time of trial. Upon information and belief, said amount exceeds the jurisdictional limits of all of the lower courts.

## AS AND FOR A FIFTH CAUSE OF ACTION: PRIVATE NUISANCE

180.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

181.    The groundwater system, including the zone of influence/capture in the groundwater that supplies Plaintiff's wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1, 6,2, 7-1,8-2, 8-3, 9-1, 9-2, 9-3, and 11-1, have been contaminated by 1,4-Dioxane, as a direct and proximate result of the intentional, unreasonable, negligent and reckless conduct of Defendants, all as alleged herein.

182.    1,4-Dioxane contamination caused by Defendants' conduct has damaged Plaintiff's property and business and unreasonably interfered with the use, benefit and enjoyment of Plaintiff's property.

183.    As a direct and proximate result of Defendants' acts and omissions creating the above-described nuisance, Plaintiff has suffered injuries from contamination of the Long Island underground aquifers and the groundwater supplying Plaintiff's production wells.

## PUNITIVE DAMAGES

184.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

185.    The conduct of the Defendants, including but not limited to:

a.      issuing no warnings and failing to divulge material information concerning the release of 1,4-Dioxane;

b.          knowing of the probability of long-lasting water contamination, including specifically high risks to aquifers, groundwater and production areas, using, processing, disposing and/or storing 1,4-Dioxane, caused great harm to Plaintiff, demonstrating and outrageous conscious disregard of Plaintiff and its customers' safety with implied malice and oppression for which punitive and exemplary damages should be imposed; and

c.          knowing of the certainty of long-lasting water contamination, including specifically high risks to aquifers, groundwater and production areas, disposing of and storing 1,4-Dioxane in poorly maintained underground storage tanks and knowingly causing great harm to Plaintiff, demonstrating an outrageous conscious disregard of Plaintiff and Plaintiff's customers' safety with implied malice and oppression for which punitive and exemplary damages should be imposed.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for a judgment against these Defendants for:

1.     Compensatory damages that exceed the jurisdictional limit of this court;

2.     Punitive damages that exceed the jurisdictional limit of this court;

3.     Reasonable fees for attorneys and expert witnesses;

4.     Costs and disbursements of this lawsuit;

5.     Interest on the damages according to law; and

6.     Any other and further relief as the Court deems just, proper and equitable.

Dated:  New York, New York
           September 23, 2019

Napoli Shkolnik, PLLC
*Attorneys for Plaintiff*

Paul J. Napoli, Esq.
Tate J. Kunkle, Esq.
360 Lexington Avenue, 11th Floor
New York, New York 10017
(212) 397-1000

SUPREME COURT OF THE STATE OF NEW YORK
NASSAU COUNTY

HICKSVILLE WATER DISTRICT,

                    *Plaintiff,*

          - against -

JERRY SPIEGEL ASSOCIATES, INC., E-Z-EM, INC., ARKWIN INDUSTRIES, INC., 1ST STATE, LLC, TISHCON CORP., C&O REALTY CORP., WESTBURY JEEP, CHRYSLER, DODGE, INC., WILLIAM A. GROSS CONSTRUCTION ASSOCIATES, INC. GRAND MACHINERY EXCHANGE, INC., ADVANCE FOOD SERVICES EQUIPMENT, INC., currently doing business as ADVANCE TABCO, INC., IMC EASTERN CORPORATION, ALSY MANUFACTURING, currently doing business as EMESS MANUFACTURING, INC., LBA PROPERTIES, INC., MATCO SERVICE CORP., ADCHEM CORP, currently doing business as RPJ ENTERPRISES, INC., EFFICIENCY SYSTEMS CO., INC., HUBBERT FREUND WOODWORKING COMPANY INCORPORATED, KORG U.S.A. Inc., HURON TOOL & CUTTER GRINDING CO., INC., ROYAL GUARD FENCE CO., INC., METPAR CORP , BLEN-CAL ELECTRONICS INDUSTRIALS, INC., B&G LIGHTING, currently doing business as SPECTRUM SIGNS, INC., UTILITY MANUFACTURING CO., INC., AVANEL INDUSTRIES, INC., ISLAND TRANSPORTATION CORPORATION, NEST EQUITIES, OSRAM SYLVANIA PRODUCTS, INC., currently doing business as OSRAM SYLVANIA, INC., GTE CORPORATION, FUJIFILM NORTH AMERICA CORPORATION, ANCHOR/LITH-KEM-KO, INC., VISHAY GSI,INC., AIR TECHNIQUES, INC.,
                    *Defendants.*

=================================================================

SUMMONS AND COMPLAINT

=================================================================

**NAPOLI SHKOLNIK PLLC**
*Attorneys for*: Plaintiff
360 Lexington Ave, 11th Floor
New York, New York 10017
(212) 397-1000

=================================================================

The undersigned attorney certifies pursuant to 22 NYCRR §130-1.1-a that he has read the within papers and that, to the best of his knowledge, they are not frivolous as that term is defined in 22 NYCRR §130-1.1(c).

_____
Tate J. Kunkle

=================================================================

Service of a copy of the within papers is hereby admitted.
Dated, _____

          I.                                        ATTORNEY(S) FOR:

=================================================================

PLEASE TAKE NOTICE:
     ☐ NOTICE OF ENTRY
          that the within is a (certified) true copy of a duly entered in the office of the clerk of the within
          named court on _____200__ .
     ☐ NOTICE OF SETTLEMENT
          that an order                                   of which the within is a true copy
          will be presented for settlement to the HON.                    one of the judges of the
          within named Court, at on          200___ at_____ O'clock __ .M.
Dated, _____

                              Yours, etc.
                              NAPOLI SHKOLNIK, PLLC