```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK



HICKSVILLE WATER DISTRICT,     *    Case No. 19-CV-6070(PKC)
                               *
                               *
              Plaintiff,       *    Brooklyn, New York
                               *    May 19, 2022
     v.                        *
                               *
JERRY SPIEGEL ASSOCIATES,      *
  et al,                       *
                               *
              Defendant.       *
                               *
* * * * * * * * * * * * * * * *
```

```
        TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
             BEFORE THE HONORABLE ROBERT M. LEVY
               UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

For the Plaintiff:              PAUL J. NAPOLI, ESQ.
                                LILIA FACTOR, ESQ.
                                Napoli Shkolnik
                                400 Broadhollow Road
                                Suite 305
                                Milville, NY  11747

For Royal Guard Fence Co.:      LEE J. MONDSHEIN, ESQ.
                                445 Broadhollow Road
                                Suite 419
                                Melville, NY  11747

For Metpar Corp.:               BENNETT H. LAST, ESQ.
                                Gilbride, Tusa, Last &
                                  Spellane LLC
                                675 Third Avenue
                                31st Floor
                                New York, NY  10017

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES Cont'd:

For ADCHEM Corp.:                 DANIEL RIESEL, ESQ.
                                  Sive, Paget & Riesel, PC.
                                  560 Lexington Avenue
                                  15th Floor
                                  New York, NY  10022

                                  PREVIN AJIT WARAN, ESQ.
                                  Grae & Grae, LLC
                                  The Equitable Building
                                  120 Brodaway
                                  Suite 28th Floor
                                  New York, NY  10271

For ICA, GSM, FED, and Duffy      ELIZABETH KNAUER, ESQ.
Owners:                           Sive Paget & Riesel, PC
                                  560 Lexington Avenue
                                  15th Floor
                                  New York, NY  10022

For Arkwin Industries, Inc.:      COLLEEN M. TARPEY, ESQ.
                                  MARKY A. SUAZO, ESQ.
                                  BILL LOLIS, ESQ.
                                  Garfunkel Wild PC
                                  111 Great Neck Road
                                  Great Neck, NY  11021

For Osram Sylvania Products       JOHN McGAHREN, ESQ.
Inc.:                             Morgan, Lewis & Bockius
                                  502 Carnegie Center
                                  Princeton, NJ  08540

For Oerlikon Metco (US) Inc.:     RICHARD LEFF, ESQ.
                                  Bardsley, Benedict &
                                    Cholden LLP
                                  120 Broadway
                                  Suite 220
                                  New York, NY  10271

For Island Transportation         ROBERT LUFRANO, ESQ.
Corporation:                      Epstein Becker & Green
                                  150 College Road West
                                  Suite 301
                                  Princeton, NJ  08540
```

3

APPEARANCES Cont'd:


| | |
|---|---|
| For B&G Lighting, d/b/a<br>Spectrum Signs: | SUSAN M. PASCALE, ESQ.<br>Law Office of Susan M.<br>Pascale<br>158 Fairlawn Avenue<br>West Hempstead, NY  11552 |
| For Equity Share I Assoc. and<br>750 Summa Avenue, LLC: | JOSHUA FELDMAN, ESQ.<br>Certilman Balin LLP<br>90 Merrick Avenue<br>East Meadow, NY  11554 |
| For IMC Eastern Corporation: | ROBERT R. LUCIC, ESQ.<br>Sheehan Phinney Bass &<br>  Green Professional<br>  Assoc.<br>1000 Elm Street<br>PO Box 3701<br>Manchester, NH  03105 |
| For J.R. Westbury Realty, LLC<br>and Westbury Jeep, Chrysler,<br>Dodge, Inc.: | CYE E. ROSS, ESQ.<br>30 Vasey Street<br>Suite 1800<br>New York, NY  10007 |
| For Defendant, Jerry spiegel<br>Associates, Inc.: | MICHAEL W. PETERS, ESQ.<br>DAVID KIVASPRISADE, ESQ.<br>The West Firm, PLLC<br>Peter Kiernan Plaza<br>575 Broadway<br>Ste 2nd Floor<br>Albany, NY   12207-2931 |
| For Efficiency Systems Co., Inc: | WILLIAM A. RUSKIN, ESQ.<br>800 Westchester Avenue<br>Suite N-641<br>Rye Brook, NY  10573 |
| For Utility Manufacturing Co.,<br>Inc.: | RALPH BRANCIFORTE, ESQ.<br>Sahn Ward Coschignano &<br>  Baker LLP<br>333 Earle Ovington Blvd.<br>Suite 601<br>Uniondale, NY  11553 |

4

APPEARANCES Cont'd:

For United States Department of    DAVID J. HAMMACK, ESQ.
Energy:    DOJ-Civ
    PO Box 340, Ben Franklin
      Station
    Washington, DC  20002

    THOMAS R. PRICE, ESQ.
    DOJ-USAO
    610 Federal Plaza
    Central Islip, NY  11722

For FUJIFILM North America Corp.:    KEVIN F. BUCKLEY, ESQ.
    Mound Cotton Wollan &
      Greengrass
    One Battery Park Plaza
    9th Floor
    New York, NY  10004

For Vishay GSI, Inc.:    TODD M. HOOKER, ESQ.
    KELLY M. STOLL, ESQ.
    Askin & Hooker, LLC
    200 Woodport Road
    Suite A
    Sparta, NJ  07871

For Lonie Jo Realty LLC:    JUDI ABBOTT CURRY, ESQ.
    Harris Beach, LLP
    100 Wall Street
    23rd Floor
    New York, NY  10005

For Air Techniques, Inc.:    JUDAH SERFATY, ESQ.
    Rosenberg Calica & Birney
      LLP
    100 Garden City Plaza
    Suite 408
    Garden City, NY  11530

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

5

1          (Proceedings commenced)

2          THE COURT:  All right.  Good morning again.  This is

3     Judge Levy, we're here on Docket No. 19-CV-6070.  Hicksville

4     Water District v. Jerry Spiegel Associates, et al.

5          Will counsel please state their experience -- their

6     appearances for the record, starting with the plaintiff?

7          MR. NAPOLI:  Good morning, Judge Levy.  This is Paul

8     Napoli for Hicksville Water District with my associate, Lilia

9     Factor.

10          MR. MONDSHEIN:  Good morning, Your Honor.  My name

11     is Lee Mondshein.  I am the attorney for Royal Guard Fence,

12     and for defendant, Genoa Properties.

13          MR. LAST:  Good morning, Your Honor.  This is

14     Bennett Last from Gilbride, Tusa, Last & Spellane.  We

15     represent Defendant Metpar.

16          MR. RIESEL:  Your Honor, this is Daniel Riesel and

17     Dane Waran (ph) from Sive, Paget & Riesel.  We represent

18     ADCHEM and RPG Enterprise -- RPJ Enterprsis.

19          MS. KNAUER:  Good morning, Your Honor.  Elizabeth

20     Knauer from Sive, Paget & Riesel.  We represent ICA 270 to 280

21     LLC (indiscernible)**1:09 to 280 LLC, GSM 270 to 280 LLC, SAF

22     270 to 280 LLC, ITA 209 LLC, FED 209 LLC, GSM 290 LLC, SAF 209

23     LLC, and 325 Duffy Owner LLC, also known as the Duffy Avenue

24     Owners.  Thank you, Your Honor.

25          MS. TARPEY:  Good morning, Your Honor.

1          MR. McGAHREN:  Good morning, Your Honor.

2          MS. TARPEY:  This is Colleen Tarpey.  I also have,

3     from my office, Marky Suazo and Bill Lolis.  We're here for

4     Arkwin Industries, Inc.

5          MR. McGAHREN:  Good morning, Your Honor.  This is

6     John McGahren from Morgan, Lewis & Bockius, representing the

7     GTE Sylvania defendants.

8          MR. LEFF:  Good morning, Your Honor.  This is

9     Richard Leff from BBC Law, representing Solder (ph) Metco.

10         MR. LUFRANO:  Good morning, Your Honor.  This is

11    Robert Lufrano with Epstein Becker & Green for Island

12    Transportation Corporation.

13         MS. PASCALE:  Good morning, Your Honor.  This is

14    Susan Pascale for B&G Lighting, Spectrum Signs.

15         MR. FELDLMAN:  Good morning, Your Honor.  This is

16    Joshua Feldman from Certilman Balin for 750 Summa Avenue LLC,

17    Equity Share I Associates, and (indiscernible)**02:26 LP.

18         MR. LUCIC:  Good morning, Your Honor, this is Robert

19    Lucic from Sheehan Phinney Bass & Green on behalf of IMC

20    Eastern Corporation.

21         MR. ROSS:  Good morning, Your Honor.

22         MR. PETERS:  Good morning, Your Honor.

23         MR. ROSS:  Cye Ross, representing Westbury Jeep and

24    Westbury Realty.

25         MR. PETERS:  And good morning, Your Honor.  This is

1    Michael Peters representing -- from the West Firm,

2    representing Jerry Spiegel Associates, Frost Street

3    Associates, and Next Millenium Realty.  And I believe my

4    colleague, David Kivaprisade (ph) is also on the line.

5            MR. KIVAPRISADE:  That's correct.

6            MR. RUSKIN:  Good morning, Your Honor.  This is Bill

7    Ruskin from the Law Office of William Ruskin on behalf of

8    defendant, Efficiency Systems Company.

9            MR. BRANCIFORTE:  Good morning, Judge.  This is

10    Ralph Branciforte from the law firm of Sahn Ward

11    (indiscernible)**3:26, representing the defendants Utility

12    Manufacturing and Next Equities.

13            MR. HAMMACK:  Good morning, Your Honor.  This is

14    David Hammack representing the United States Department of

15    Energy.

16            MR. PRICE:  Good morning, Your Honor.

17            MR. BUBLICK:  Good morning, Your Honor.

18            MR. PRICE:  It's Attorney Thomas Price, also

19    representing Department of Energy.

20            MR. BUCKLEY:  Good morning, Your Honor, this is

21    Kevin Buckley with Mound Cotton Wollan & Greengrass,

22    representing FUJI Hunt.

23            MR. HOOKER:  Good morning, Your Honor --

24            MS. CURRY:  Good morning, Your Honor.  This is Judi

25    Curry --

8

1          MR. HOOKER:  -- I representing Vishay GSI.  I'm here

2     with my associate, Kelly Stoll.

3          MS. CURRY:  Good morning, Your Honor.  Judi Abbott

4     Curry from Harris Beach, representing Lonie Jo Realty.

5          MR. SERFATY:  Good morning, Judge.  This is Judah

6     Serfaty from Rosenberg Calica & Birney, representing Air

7     Techniques, Inc.

8          THE COURT:  Is there anyone who has not placed their

9     appearance on the record?

10        (No audible response)

11         THE COURT:  All right.  I think -- well, let me

12    start with plaintiff's counsel.  What do you see as on the

13    agenda for today?

14         MR. NAPOLI:  I think frankly, Your Honor, I think

15    we're in good shape.  By this morning we are supposed to

16    inform the Court whether or not we'd be agreeable to

17    mediation, and the plaintiffs are agreeable to mediation.  I

18    should point out that we have been engaging with some of the

19    defendants privately, and it looks like potentially

20    successfully.  But we would welcome a mediation with the court

21    appointed mediator.

22         The second issue really, which would be here, would

23    be the scheduling, and that has been taken care of by the

24    judge's order after we had competing letters.  We have an

25    order now in place.

9

1           The parties just need, among themselves, to work out

2    an ESI protocol, but we should be able to meet and confer and

3    have something put together in the next week or so, so not to

4    interfere with discovery.  Those, to me, were the big issues.

5    I think really, you know, getting the defendant's response on

6    mediation would be the most important thing.

7           THE COURT:  Okay.  Do the defendants fall into

8    several groups that are represented by one particular point of

9    view, or are we looking at many different perspectives here?

10          MR. NAPOLI:  Your Honor --

11          UNIDENTIFIED SPEAKER:  (Indiscernible)**6:20.

12          MR. NAPOLI:  -- if I could, Your Honor, just say one

13   thing before some -- we've been trying to coordinate with the

14   defendants, and I don't know if they've picked one person to

15   coordinate with us.  We've been speaking to Mr. Leff, who I've

16   had some experience with in the past in front of Judge

17   Hellerstein, and he has been very kind to coordinate where

18   most of the defendants don't.  There are times when we speak

19   to them individually.

20          THE COURT:  Okay.  And, Mr. Leff, would you

21   (indiscernible)**6:51?

22          MR. LEFF:  We -- sure.  We have -- the defendants

23   have formed kind of an od hac -- ad hoc defense liaison group.

24   We have not had a group call to discuss going to mediation or

25   not.  There was -- everybody was filing their answers to the

1   amended complaint and cross-claims, and there were issues to

2   get that -- the initial discovery order locked down.  And now

3   that we have dates, I think everybody -- and there's the

4   initial disclosures that are due, I think the beginning of

5   June.  I think everybody was going to go for that, and at that

6   point after initial disclosures were exchanged, we were going

7   to regroup, but we haven't gotten further than that just

8   because there have been, like I said, deadlines that people

9   have been meeting at the moment.

10          THE COURT:  So what would you purpose?  Do you need

11   a week or two to figure out whether you'll all have a unified

12   position of who wants to go to mediation or not?  Does that

13   sound (indiscernible)**07:50 from your perspective?

14          MR. LEFF:  I mean, we certainly probably need a week

15   or two to kind of -- you know, as you heard from everybody

16   answering on the call, there is, you know, about 20 of us to

17   coordinate.  This many peoples' calendars takes a little bit,

18   but we are certainly happy to kind of coordinate a phone call

19   with everyone within the next two weeks, and then we can kind

20   of -- we can get back to the Court as to what the collective

21   position is.  So I could probably get back to you in three

22   weeks.  You know, we could do it by email and we can kind of

23   advise the Court what we think for next steps on that -- in

24   that regard.

25          THE COURT:  So your proposal is that you'll meet and

1    confer with your colleagues and file a status report in three

2    weeks?

3                   MR. LEFF:  Sure.

4                   THE COURT:  Okay.  Would that be --

5                   UNIDENTIFIED SPEAKER:  Your Honor --

6                   THE COURT:  -- (indiscernible)**08:41 plaintiff, or

7    would that be just on behalf of some of the defendants?

8                   MR. LEFF:  I think that would just be on behalf of

9    defendants.

10                   THE COURT:  Okay.  Who else would like to be heard

11    from defendant's side?

12                   MR. RUSKIN:  Your Honor, my name is Bill Ruskin.  I

13    represent Efficiency Systems.

14                   And I don't know when the appropriate time to raise

15    it is, but one of the things that Morgan Lewis's letter to

16    Your Honor on April 8th, 2022 raised, was whether the Court

17    should consider entering a *Lone Pine* order as a case

18    management technique in this case.  And the issue is one

19    that's opposed by the plaintiff, it's one that's passionately

20    endorsed by a number of the defendants, particularly the de

21    minimis defendants.  And at the appropriate time, Your Honor,

22    I'd like to have a couple of minutes to discuss what the *Lone*

23    *Pine* concern is in this case.

24                   THE COURT:  All right.  Is that something that needs

25    to be resolved before we talk about mediation?

1          MR. RUSKIN:  Well, it does from the point of view of

2    Efficiency Systems, and I can't speak for other de minimis

3    defendants, although I've spoken to at least 10 other

4    defendants who view themselves as de minimis.

5          My client is uninsured and is a small company in the

6    Hicksville Water District area, and we don't know what the

7    claims are against our client.  We filed a motion to dismiss.

8    It was denied.  But I can represent to the Court that no

9    environmental sampling has ever been conducted on our property

10   or to our knowledge, under our property, and so we wouldn't

11   know what it is we're mediating.

12         We -- I don't have the -- my client -- I've not

13   attended a single deposition in this case, although there have

14   been over -- I believe there have been a great number of

15   depositions taken already.  I've not reviewed any documents,

16   although Mr. Napoli stated during the Rule 26 Call that he

17   could produce 8 million documents produced in the *SCWA* --

18   there's a *Dowell* (ph) litigation within a couple of weeks.

19         All that the defendants who are seeking a *Lone Pine*

20   order want, and this really has to do with serving as a basis

21   for a mediation discussion, is some basic information as to

22   why they've been named in this case.  What 1,4 Dioxane is

23   attributable to the operations of those defendants who are

24   seeking this case management order relief?

25         And it's not something -- now, the Napoli firm has

1    been involved in -- according to Lexis, eight *Lone Pine* cases.

2    Some -- in some cases, they've prevailed and convinced the

3    court that it's not appropriate.  In many other cases, such as

4    in the District of Pennsylvania, the District of what --

5    Western District of New York, the Eastern District of

6    Missouri, the court has said that a *Lone Pine* is a proper

7    procedural tool to use.

8            And I would argue, Your Honor, that in this case,

9    basic fairness is required to, as the Western District of New

10   York said, to identify and cull potentially meritless claims

11   at an early stage in litigation.

12           And I don't mean to monopolize this call with this

13   issue, but my client isn't prepared to go to mediation.  I've

14   been a mediator for the Southern District of New York for 25

15   years.  I've mediated personally over 200 cases, but I can't

16   go -- I couldn't go to mediation in a case where I have no

17   idea what the claims are.  And my client can't afford to send

18   me to a mediation, or to prepare for the mediation, because he

19   doesn't have any money.

20           And so I don't mean to be crying poor, but I think

21   that there are important considerations that some of the

22   smaller defendants in this case, really seeking some basic

23   fairness in terms of the procedure to be applied in a case,

24   which is now being -- it now will last, through fact and

25   expert discovery, for over two more years.

14

1          THE COURT:  So if -- what are you asking the Court

2     to do?  If a *Lone Pine* order were --

3          MR. RUSKIN:  What I'm asking --

4          THE COURT:  -- (indiscernible)**13:39.

5          MR. RUSKIN:  A *Lone Pine* order, Your Honor, would

6     require the plaintiffs to provide, with supporting affidavit

7     evidence, some basic information that would allow them to go

8     to the Court and say, you see, Your Honor, we do have a basis

9     for bringing Efficiency Systems in the case.  In 1966, there

10    was a release of 1,4 Dioxane from their premises.  That's the

11    basis for the claim.

12         Or there's groundwater testing beneath their

13    property that shows that there's 1,4 Dioxane there that's, you

14    know, heading directly toward our well.  It's basically

15    something that provides assurances to the Court that this case

16    has been brought against a properly named claims.

17         I'm not suggesting that the plaintiffs should do all

18    their expert discovery, or that this is a substitute for

19    summary judgment.  It's basically a well-established technique

20    that federal courts and circuit courts around the country have

21    all discussed, and at times acknowledged, admitting that there

22    are pros and cons to this procedure.  But it would basically

23    allow me to go back to Efficiency Systems and say, you are in

24    this case because.

25         And right now, despite informal calls I've had with

1    Ms. Factor, the plaintiff's counsel, and having spent an

2    unreasonable -- a lot of money of my client's money in

3    preparing a motion to dismiss and a reply to the plaintiff's

4    opposition, I still don't know what this case is about.  And

5    I'm not saying this -- I'm not posturing.  I've done my due

6    diligence.  I really think the plaintiffs have an obligation

7    when they bring a case of this magnitude against smaller

8    entities that they have an obligation to basically front-end,

9    at least to apprise them what the claim is, other than to say,

10   well, we found on the internet some reference to your client

11   in 1974, but not really -- if you read that -- if you read the

12   internet, it doesn't connect the dots at all.  It's -- I'm

13   just at a loss to understand what I'm doing in this case, and

14   I'd like nothing better than to take Mr. Napoli at his word,

15   and to review those 8 million documents he can produce in some

16   other litigation, but my client just can't -- will not pay me

17   to do that and doesn't -- I'm basically -- this is an

18   existential threat to my client, and if he's going to be in

19   that case -- in this case, I want him to know that he's in the

20   case for a good reason.

21          THE COURT:  All right.  And I -- we didn't have

22   actual -- any full briefing on the *Lone Pine* order issue.

23   Each side I think briefly (indiscernible)**16:44.

24          MR. NAPOLI:  Would you like me to respond, Judge?

25          THE COURT:  Yeah.  But I'm just actually looking at

16

1    the April 8th letter in which plaintiff was submitting that

2    neither the request, or nor the briefing of such a proposed

3    motion is within the proper scope of what the parties were

4    asking to do at this juncture.

5              So yes, let me hear from counsel at this point.  Go

6    ahead.

7              MR. NAPOLI:  I have several points, Judge.  First, a

8    *Lone Pine* order is used rarely, it's defeated most of the

9    times, and it's used in mass tort litigation that's mature,

10   where we have a good sense of what type of cases should be

11   involved.  I cannot think of the last time a *Lone Pine* order

12   was imposed in a case that I was on.  This is not the type of

13   case, okay, that involves the need for a *Lone Pine* order.

14   They have a complaint, they have the right to do the

15   discovery.  I wanted a year discovery.  The defendants asked

16   for two years of discovery.  I did not ask for two years of

17   discovery.

18             My phone is always open to Mr. Ruskin to talk about

19   the case, but it's inappropriate at this time to have a *Lone*

20   *Pine* order.  They want to make a motion for a *Lone Pine* order,

21   they can go right ahead and we will oppose it.  99.9 percent,

22   they're going to lose because they don't meet any of the

23   criteria when it comes to a *Lone Pine*.

24             So he should know full well why he's in the case.

25   They own property in one of the most contaminated sites on

1    Long Island that's contributing to plumes that are causing my

2    client to have to pay hundreds of millions of dollars to

3    remediate, treat, and have operations and maintenance for the

4    next 50 years to clean up the site.

5            So you know, it's -- he's filed his motion.  If he

6    wants to file another one, I can't stop him, you know, but it

7    shouldn't just be this ad hoc at a status conference, you

8    know, let's impose a *Lone Pine* order in a case that, first of

9    all doesn't fit the criteria, is not the type of case you

10   would even have it on, so I mean, that's all I really think I

11   need to say at this point.

12           THE COURT:  Uh-huh.

13           MR. McGAHREN:  Your Honor, this is John McGahren.

14   If I might be heard on this?  I support a lot of what Mr.

15   (indiscernible)**19:010 had to say, and disagree a great deal

16   with what Mr. Napoli had to say.

17           But getting back to the question of mediation and

18   groups that Your Honor asked about, it is important for the

19   defendants to understand which wells the plaintiffs believe

20   that their clients are linked to.  And they did that in their

21   first complaint, which was withdrawn and an amended complaint

22   took away the wells that were allegedly connected to different

23   defendants.  It's important information, and this is not a

24   litigation that's happened in isolation.  The Hicksville Water

25   District is involved in many litigations and many settlements.

1    They know the capture zones are their plumes, and that's

2    important information to narrow this litigation.

3            THE COURT:  Does anyone else wish to be heard?  I'm

4    not deciding the *Lone Pine* issue without briefing, and I will

5    say that I've done a number of environmental cases, circuit

6    cases, and other case, and this is actually the first *Lone*

7    *Pine* order request I've had.  I've had cases with numerous

8    parties.  So I'll be looking at this carefully and with

9    interest, and the questions really are questions of timing.

10           But what I wanted to know was, first and foremost,

11   who is ready to go to mediation, and would that be an

12   efficient way at this point in the litigation to see if we can

13   resolve some of the issues that concern parties that don't

14   have the money to litigate at this point, or that would like

15   to find a more cost effective way to resolve the disputes.

16           So if anybody would like to be heard, first of all,

17   on the mediation issue, who has a different point of view from

18   one that's been suggested so far, I'd like to hear it.

19           MR. McGAHREN:  Well, Your Honor, it's John McGahren

20   again, if I might just say, my client is amenable to

21   mediation.

22           THE COURT:  Okay.

23           MR. MONDSHEIN:  And this is Lee Mondshein for Royal

24   Guard in general.  We will also participate in the mediation.

25           MR. LAST:  This is Bennett Last for Metpar.  As

1     again, a defendant that views itself as a de minimums

2     involvement, we'd be happy to engage in mediation if it would

3     be a more cost-effective method, because the expense of this

4     could put the company out of business.

5             THE COURT:  Uh-huh.  All right.  Before I hear from

6     anyone else, in terms of mediation, one concern is the

7     question of timing.  (Indiscernible)**21:53 time to engage in

8     mediation before extensive expenses are incurred and if so,

9     what kind of information, if any, could be shared among the

10    parties to prepare you for mediation?

11            MR. NAPOLI:  Well, Your Honor, this is Paul Napoli,

12    the plaintiff again.  Like I said in the beginning, we have

13    begun conversations before the Court asked for suggestion of

14    mediation, with a number of defendants, and we've been meeting

15    with them, presenting information.  Some of them have

16    requested additional information from us, which we have been

17    providing as it's available.

18            I think we are -- we are ready to present, and if

19    the Court could recommend the mediator, whoever wants to

20    participate, we'd be ready to do that, and we do take in

21    account the wherewithal of the various defendants.  We do not

22    want to see anybody go out of business.  But as a municipal

23    entity, we also have an obligation to our rate payers and the

24    people who are relying on the water in the community.

25            So we take that all into account.  We think we're

20

1    ready and we could present and deal with those issues with the

2    mediator and each individual defendant.

3              THE COURT:  Uh-huh.

4              MR. LEFF:  Your Honor, it's Richard Leff, before we

5    -- if you don't mind.  I think I -- if we go back to where we

6    started, I would ask that you just kind of let -- because

7    there are so many people, like -- and we haven't discussed it,

8    to kind of let us confer --

9              THE COURT:  Uh-huh.

10             MR. LEFF:  -- and kind of -- we'll report to you.

11   Maybe some are, maybe some aren't, maybe some are ready, maybe

12   some are not, and I think, you know, us not having conferred

13   with one another, I think we'd rather give you a more clear

14   picture than kind of an ad hoc, yes, like some are willing,

15   some are not willing, some are not willing to make a

16   commitment right now on the phone in front of everybody.  So

17   I'd ask that you'd just let us confer and get back to you in

18   three weeks.

19             THE COURT:  It sounds like a good plan to me.  And

20   let's talk about, just for a minute, about what kind of

21   mediation we're talking about.  Would this be a private

22   mediation, or would you be using the court's mediation panel?

23   What are you thinking?  Or is that something you want to get

24   back to me on as well in a few weeks?

25             MR. NAPOLI:  Yeah.  Let us talk -- let us talk, Mr.

1  Leff and I, for the group, and get -- and then we can report

2  back to the Court.

3          THE COURT:  Okay.

4          MR. NAPOLI:  If we could set that down for a date in

5  three weeks, just to keep us all in order, that would be

6  great.

7          THE COURT:  That would be good.  And do -- is there

8  anyone who needs to have a further explanation of how the

9  court's mediation program works, or is that something that

10 you're familiar with, or you'd like to just read up on,

11 online?

12         MR. NAPOLI:  I am familiar with it.

13         THE COURT:  Okay, because in our program there is a

14 fee, although it's a much reduced fee, and you do get to

15 select your own mediator, and we have some mediators who, you

16 probably all know who have extensive experience in this area.

17         If anybody -- let me leave it this way, because it's

18 -- I don't want to put anyone in an awkward position.  We have

19 an ADR administrator.  Her name is Robin Weinstein.  She's

20 fabulous.  She's very hands-on.  She knows all of our 175

21 mediators, and she is -- if you need any help either selecting

22 a mediator or have any questions about the program, she'd be

23 more than happy to answer them.

24         MR. LEFF:  Thank you, Your Honor.

25         MR. NAPOLI:  Thank you, Your Honor.

22

1           THE COURT:  Yep.  Okay.  All right.  So I think we

2     should just get out the calendars now and then we'll move from

3     there.

4           So today is May 19th.  All right, I have a criminal

5     arrangement in three weeks and you don't want to sit around

6     waiting for me to finish arraignments.  However, if we could

7     -- would Thursday the 2nd or Friday the 3rd of June be too

8     soon to make up your minds about --

9           MR. LEFF:  I think that would be too soon, Your

10    Honor.  If you could give us a --

11          THE COURT:  Too soon?

12          MR. LEFF:  -- week after that?

13          THE COURT:  All right.  Well, I'm on -- I've got

14    criminal arraignments the following week, which is probably

15    not great.

16          MR. LEFF:  How about the 16th?

17          MR. NAPOLI:  If -- yeah, I'm fine the 16th.  The

18    question -- should we send Your Honor a letter telling you if

19    we're amenable to mediation in a private -- or through the

20    court, and who is and who isn't?  I don't think we need

21    everyone to be on board.

22          THE COURT:  Yeah, you can file a written status

23    report.  That would be just fine, and I can -- yeah, we -- in

24    fact, no one needs to be on.  We don't need to have a

25    conference, or we can have a conference.  Whatever you wish.

23

```
1              MR. NAPOLI:  I would think --
2              MR. LEFF:  How about we submit a letter to you by
3    the 10th, Your Honor, and then that will guide what we do
4    going forward.  Maybe there will be a conference with some and
5    not others.  We can decide.  Because at the same time, you
6    know, this call, while we can attempt to pull it together
7    quickly, you know, all 20-something of us to have final idea
8    of going forward with the mediation, we all have to get
9    approval from your clients, right.  So and that's more phone
10   calls and emails and then everybody has to kind of get back.
11   The clients have to get back to their counsel, we have to get
12   back to each other.  Like, it's just a little bit of
13   coordination and you know, herding of cats.
14             So maybe we write a letter -- you know, submit
15   something to you by the 10th, and that can clarify whether or
16   not there is another conference needed to be held, and if so,
17   with whom.
18             THE COURT:  I think that's a great idea.  Just give
19   me (indiscernible)**28:16.
20             MR. McGAHREN:  Just one question.  Your Honor, this
21   is John McGahren.  One question.  You know, we do have the
22   United States on the phone here and they're not going to be
23   part of any liaison group, so I think we need to factor in
24   their views on this.  I'm just mentioning that.
25             THE COURT:  Good point.  And in other cases I've
```

1     had, we've had the main defendant, you, and then the United

2     States separately so there would always be a representative

3     from both.  That's a very good point.

4              So who'd like to speak for the United States at this

5     point?

6              MR. PRICE:  Thank you, Your Honor.  Thomas Price.

7              I'm not -- I'm not sure exactly what the question

8     is.  As far as whether or not the United States is amenable to

9     mediation, we would be willing to --

10             THE COURT:  Oh, good.

11             MR. PRICE:  -- consider that route.

12             THE COURT:  Yes.  I think the question is how you

13    want to organize your responses.  Do you -- would you be part

14    of the larger group of defendants?  Would you be speaking

15    separately, not through the -- whoever is speaking for the

16    larger group of defendants?  And you don't have to answer that

17    question now.  Just, if there's anything particular --

18             MR. PRICE:  I think --

19             THE COURT:  -- about the United States's position in

20    this case, then I think you could just put that in the status

21    report, or file your own status report.

22             MR. PRICE:  I believe we can coordinate with the

23    other defendants in terms of responding to -- responding in a

24    status report.

25             THE COURT:  Okay.  All right.  So there will be a

1   status report on June 10th with a road map as to how you'd

2   like to proceed with mediation.

3           MR. PRICE:  Your Honor, I would say my colleague,

4   David Hammack, has reached out to other defendants last night

5   as far as cross claims.  There is an issue as far as filing a

6   motion to dismiss the cross claims.  I don't know that on that --

7   that may affect, or come into play with mediation.  I don't

8   know if David wants to weigh in on that.

9           MR. HAMMACK:  Good morning, Your Honor.  This is

10  David Hammack with the Department of Justice.

11          I don't know that our anticipated motion to dismiss

12  the defendant's tort cross claims against US DOE should have

13  any impact on mediation.  I think the rest of the case will be

14  pretty much unaffected all together.  We are still hoping to

15  file that motion, though, and I'm working with the cross-

16  claiming defendants on a briefing schedule, and perhaps we'll

17  be ready to propose a briefing schedule on June 10th.

18          THE COURT:  All right.  And just check with Judge

19  Chens's rules.  She may have some rules as well.

20          MR. HAMMACK:  Thank you, Your Honor.

21          THE COURT:  Yes.  So put everything that I need to

22  know in the status report on the 10th.  It can be a joint

23  status report or just one from the defendants, but I would

24  like to know whether plaintiff agrees with the defendant's

25  position or what the plaintiff's response would be.  That's

26

1    why I think a joint status report would probably make the most

2    sense.

3              MR. LEFF:  That's fine.  We will do that, Your

4    Honor.

5              THE COURT:  Okay.  So I will not schedule another

6    conference until I read your status report on the 10th.

7              MR. LEFF:  Okay.

8              THE COURT:  All right.  Anything else?

9              MR. BRANCIFORTE:  Judge, I have one clarification --

10             MR. LEFF:  None.

11             MR. BRANCIFORTE:  -- if I could, please?  This is

12   Ralph Branciforte for Next and Utility.

13             Judge, I'm just taking a look at your April 18th

14   order.  Apparently, it looks like you -- Your Honor scheduled

15   Rule 26 disclosures for June 1st.  Will that be put on hold

16   pending this status report on June 10th, or should we just

17   proceed with the rule (indiscernible)**32:06?

18             THE COURT:  Is there any reason to -- well,

19   (indiscernible)**32:09.  Will it be helpful for the mediation

20   to do the disclosures, or will it be a burden?

21             MR. NAPOLI:  No.  We would like to go forward with

22   the disclosures and not delay any further.  I think the --

23   that any information that's exchanged is going to be helpful,

24   not burdensome.

25             THE COURT:  That's my view as well.

```
1                 Okay.  Anything else?
2                 MR. LEFF:  Not from the plaintiffs, Your Honor.
3                 MR. LEFF:  No, Your Honor.
4                 UNIDENTIFIED SPEAKER:  No, Your Honor.
5                 UNIDENTIFIED SPEAKER:  No, Your Honor.
6                 THE COURT:  Okay.  Thank you.  I look forward to
7       reading your report.
8                 MR. LEFF:  Thank you, Your Honor.
9                 MR. NAPOLI:  Thank you, Your Honor.  Have a nice
10      week.
11                UNIDENTIFIED SPEAKER:  Have a good day, everybody.
12                UNIDENTIFIED SPEAKER:  Thank you, Judge.
13                UNIDENTIFIED SPEAKER:  Thank you.
14                THE COURT:  Thank you.
15                UNIDENTIFIED SPEAKER:  Thank you, Your Honor.
16            (Proceedings concluded)
17
18
19
20
21
22
23
24
25
```