UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
HICKSVILLE WATER DISTRICT,

                    Plaintiff,

      - against -

JERRY SPIEGEL ASSOCIATES, INC. *et al.*,

                    Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-6070 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

Plaintiff Hicksville Water District filed the present lawsuit alleging that more than 50 entities violated the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") and New York state laws by contaminating Plaintiff's water wells located in the New Cassel Industrial Area ("NCIA") with the chemical 1,4-Dioxane. (*See generally* Amended Complaint, Dkt. 112.) On March 31, 2022, this Court issued a Memorandum & Opinion denying eight separate motions to dismiss the Amended Complaint. (*See* Memorandum & Opinion on Motions to Dismiss (the "Order"), Dkt. 255.) One of those motions was filed jointly by Defendants Island Transportation Corporation ("ITC") and IMC Eastern Corporation ("IMC"), along with several other defendants. (*See* Defendants' Motion to Dismiss, Dkt. 214; *see also* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Dismissal Mem."), Dkt. 214-1, 1 n.1.) On April 14, 2022, ITC and IMC ("Defendants") moved pursuant to Federal Rule of Civil Procedure 59 and Rule 6.3 of the Local Civil Rules of this Court for reconsideration of the section of the Order that denied Defendants' motion to dismiss. (*See* Defendants' Notice of Motion for Reconsideration, Dkt. 262.) Defendants further moved to stay discovery pending the finalization of a consent decree in another lawsuit brought by the United States against Defendants

1

and other parties. (*Id.*) For the reasons stated herein, Defendants' motion for reconsideration and for a stay of discovery is denied.

## BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural background of the case as set forth in the Order, and only sets forth additional facts that are relevant to the instant motion.

In the Order, the Court denied Defendants' motion to dismiss Plaintiff's claims against them, which was based on the theory that these claims were precluded by a consent decree between Defendants and the State of New York ("State Consent Decree") in a different lawsuit. (Order, Dkt. 255, at 30–33.) On April 14, 2022, Defendants moved for reconsideration of the Order. (Notice of Motion for Reconsideration, Dkt. 262.) Plaintiff filed its opposition on May 19, 2022, (*see* Plaintiff's Memorandum of Law in Opposition to the Motion for Reconsideration and Stay of Discovery ("Pl.'s Opp."), Dkt. 298-6), and Defendants replied on June 2, 2022, (*see* Defendants' Reply Brief in Support of Motion for Reconsideration, ("Defs.' Rep. Br."), Dkt. 304). On the discovery front, the Honorable Robert Levy entered a schedule on April 18, 2022, for all defendants in this action to answer the Amended Complaint and to proceed to discovery. (4/18/2022 Docket Entry.)

Separately, since 2018, Defendants have been engaged in a lawsuit ("EPA Lawsuit") brought against them by the United States, seeking response costs incurred by the federal government for cleaning up the NCIA pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). *See United States v. IMC Eastern Corp. et al.*, No. 18-CV-3818 (GRB) (ARL) (E.D.N.Y. July 2, 2018). On April 9, 2021, the parties in the EPA Lawsuit submitted a proposed consent judgment settling that case. (*See* Notice of Lodging Proposed Consent Judgment, *IMC Eastern Corp.*, No. 18-CV-3818 (GRB) (ARL) (E.D.N.Y. Apr. 9, 2021), Dkt. 92.) On September 29, 2021,

the Government moved for entry of the consent judgment, which the Honorable Gary Brown granted on October 1, 2021. (*See id.*, Dkts. 94, 95.) Several days after Judge Brown granted the Government's motion, a group of defendants named in this case (not including Defendants) entered their appearances, as third-party defendants, in the EPA Lawsuit and moved to vacate the consent judgment ordered by Judge Brown. (*See id.*, Notice of Motion to Vacate Consent Judgment, Dkt. 96-3.) Upon the Government's application, Judge Brown vacated the October 1, 2021, Order adopting the consent judgment, and set a briefing schedule for the EPA Lawsuit parties, including the third-party defendants, to object to or express support for the consent judgment. (*Id.*, Docket Entry, 12/6/2021.) Briefing on that motion was complete as of March 16, 2022. (*See id.*, Dkt. 110.)

**DISCUSSION**

**I.   Defendants Have Failed to Meet the Standard for Granting a Motion to Reconsider**

   **A.   Applicable Standard**

"A party may move for reconsideration and obtain relief only when the party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (citations and brackets omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* (citations omitted). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citations, internal quotation marks, and ellipsis omitted), as amended (July 13, 2012).

3

### B. The Court Did Not Overlook Controlling Law or Factual Matters

Defendants do not point to any controlling law overlooked by the Court. Instead, they assert that the Court's Order overlooked "the issue of the contribution protection afforded" to Defendants by the State Consent Decree. (Defendants' Memorandum of Law in Support of Their Motion for Reconsideration ("Defs.' Br."), Dkt. 262-1, at 5.) According to Defendants, while the Order considered the *res judicata* effect of the State Consent Decree as a whole and whether Plaintiff was an instrumentality of the State, it failed to consider the effect of paragraphs 27 and 28 of the State Consent Decree, which cover the contribution protections. (Defs.' Br., Dkt. 262-1, at 2–3, 5; *see also* Declaration of Shelia Woolson, dated December 2, 2020 ("Woolson Decl."), Dkt. 214-2, Ex. A, State Consent Decree, ¶¶ 27–28.)

Defendants are incorrect, and appear to have misread the Order. In the section of the Order analyzing the impact of the State Consent Decree, the Court starts by explaining the terms of the State Consent Decree. The Court first explains that the State Consent Decree contained an agreement to release any claims between the parties of the State Consent Decree that are covered by the scope of the agreement. (Order, Dkt. 255, at 30.) Then the Court explains that per the terms of the State Consent Decree, Defendants were "deemed to have resolved their liability to the State under applicable law, including without limitation, CERCLA . . . and common law, for purposes of contribution protection," as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2). (*Id.* at 30–31.) Far from overlooking the contribution protection provisions in the State Consent Decree, the Court explicitly quoted those provisions. (*See id.*) As Defendants know, the contribution protection provisions are important because unlike the rest of the State Consent Decree, these provisions specifically "extinguish[] the potential liability of the [parties to the State Consent Decree] to each other and to persons not party to th[e] Decree." (Woolson Decl., Dkt. 214-2, Ex. A, State Consent Decree, ¶ 27.)

4

After laying out the terms of the State Consent Decree, the Court addressed the various arguments raised by Defendants. While it is true that the Court dedicated a portion of its analysis to Defendants' arguments about *res judicata* and whether Plaintiff was an instrumentality of New York State, (*see* Order, Dkt. 255, at 32–33), the Court also addressed the contribution protection provisions of the State Consent Decree when it explained that "[w]hether the terms of the consent decree would bind Plaintiff as a nonparty is a question of contractual privity," (*id.* at 34–35 (internal quotation and citations omitted)). The Court then explained that contractual privity was an issue of the intent of the parties, and that since nothing in the State Consent Decree or the Amended Complaint suggested that Plaintiff was in contractual privity and intended to be bound by the State Consent Decree, the Court could not dismiss Plaintiff's claims against Defendants. (*Id.*)

The Court's analysis of Plaintiff's status as a nonparty and whether it is in contractual privity was clearly a response to Defendants' motion to dismiss brief, which not only included, in bold, the language of the State Consent Decree about "extinguishing the potential liability of [] Defendants to each other and to persons not a party to this Decree," but also argued based on this language that they were "protected . . . from claims by persons not a party to the Decree." (*See* Defs.' Dismissal Mem., Dkt. 214-1, at 14–15.) Furthermore, as Plaintiff notes, the implication of the Court's finding that "there has been a development of new material facts since 2008," specifically that 1,4-Dioxane was not considered a hazardous substance by the EPA until 2017, was that the Defendants failed to demonstrate that the Plaintiff's claims in this case were even within the scope of the State Consent Decree. (*See* Pl.'s Opp., Dkt. 298-6, at 4–5; *see also* Order, Dkt. 255, at 32 (internal quotations marks and citations omitted).) In other words, the Court considered the impact of the contribution protection provisions, and explained both directly (in the

5

case of the contractual privity issue) and indirectly (when determining there have been "new material facts") why that part of the State Consent Decree does not mandate dismissal of Plaintiff's claims.

Therefore, the facts involved in Defendants' motion for reconsideration were previously presented to and considered by the Court. Since Defendants have not identified any facts or controlling law that the Court overlooked, the Court denies the motion for reconsideration.

## II.     A Stay of Discovery Is Unwarranted

### A.     Applicable Standard

The decision to stay discovery is an "exercise of judicial discretion . . . dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citations omitted); *see also Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 4211446, at *1 (E.D.N.Y. Mar. 7, 2018) ("The district court has considerable discretion to stay discovery upon a showing of good cause.") (internal quotations and citations omitted). In deciding whether to stay discovery, courts frequently consider the following factors: (1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay. *See Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 78–79 (E.D.N.Y. 2006). Other factors that courts consider include the nature and complexity of the action, whether some or all of the defendants have joined in the request for the stay, and the posture or stage of litigation. *See id*. None of these factors are singularly dispositive. *Hachette Distribution, Inc. v. Hudson Cnty. News Co., Inc.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991).

### B. No Stay is Warranted

Defendants assert that "it is clear" that the claims they face in this case "will need to be dismissed" if the consent judgment is approved in the EPA Lawsuit. (Defs.' Br., Dkt. 262-1, at 7.) The Court disagrees.

This Court cannot, at this stage, conclude that Defendants have made "a strong showing" that the consent judgment in the EPA Lawsuit, if granted, would necessitate dismissing Plaintiff's claims against them in this litigation. Furthermore, as there is no final consent judgment in the EPA Lawsuit, it is impossible for this Court to analyze its impact on Plaintiff's claims in this case.

To the extent that Defendants expect this Court to wade through the docket and filings in the EPA Lawsuit to analyze the impact of the *proposed* consent judgment, that is akin to asking the Court to provide "an opinion advising what the law would be upon a hypothetical state of facts[.]" *In Matter of Motors Liquidation*, 829 F.3d 135, 168 (2d Cir. 2016) (internal quotations and citations omitted). As the parties well know, "[t]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 85 (2d Cir. 2018) (quoting *Flast v. Cohen*, 392 U.S. 83, 96 (1968)).

Perhaps recognizing this problem, Defendants present a new argument in their reply, claiming that "they are not asking the Court to predict what Judge Brown will do, nor are they asking the Court to opine on the impact of the Federal Consent Decrees once they are entered." (Defs.' Rep. Br., Dkt. 304, at 8.) Defendants re-frame their stay request as a practical decision that would allow them "to conserve their resources" while the parties "wait for Judge Brown to decide the pending motion to approve the Federal Consent Decrees[.]" (*Id.* at 8–9.) However, the legal standard for ruling on a stay of discovery necessarily requires this Court to predict and opine as to the nature and impact of the consent judgment in the EPA Lawsuit because the Court must

7

determine whether Defendants "ha[ve] made a strong showing" that Plaintiff's claims are "unmeritorious." *See Hollins*, 469 F. Supp. 2d at 79.[1] While this Court understands Defendants' concerns about conserving their resources, that conservation cannot come at the expense of asking the judiciary to expend its own limited resources by issuing advisory opinions. Without a finalized consent decree, the Court is unable to conclude that Defendants have made "a strong showing" that any consent decree issued in the EPA Lawsuit will foreclose Plaintiff's claims in this case.

The remaining factors also weigh against issuing a stay, especially because Defendants have offered conflicting statements in their motion papers on the breadth of discovery and the potential prejudice posed to Plaintiff by a stay. In their initial brief, Defendants state that discovery for "CERCLA cases is always complex" and assert that discovery in this "CERCLA case with thirty defendants and fifty years of operating history is even more complex." (Defs.' Br., Dkt. 262-1, at 7.) Yet when responding to Plaintiff's argument that a discovery stay would create two separate, staggered discovery schedules as between Defendants and the numerous other defendants in this case if the consent judgment is not approved in the EPA Lawsuit, Defendants glibly state that in such a scenario "some catchup at the end of fact discovery" in this case would solve any possible prejudice to Plaintiff. (Defs.' Rep. Br., Dkt. 304, at 9.) Defendants cannot have it both ways: if the discovery as to Defendants is so complex, such that it would make sense for the discovery to be stayed for now, then staying discovery only as to Defendants would create the risk of staggered discovery schedules, which would prejudice Plaintiff.

---

[1] In fact, Defendants assert later in their reply brief that "the opposition to the Federal Consent Decrees presented by the third-party defendants was already considered and rejected by the United States," a party to the proposed consent decree. (Defs.' Rep. Br., Dkt. 304, at 9.) Defendants further state that "[f]ar from being vigorous, the opposition [by the third-party defendants] was redundant." (*Id.*) This argument, again, requires this Court to dive into the merits for and against the EPA lawsuit consent decree, which the Court declines to do.

8

Moreover, as Plaintiff points out, much of the discovery sought in this case will likely overlap with discovery Defendants may have produced, collected, or reviewed in connection with prior litigation. (Pl.'s Opp., Dkt. 298-6, at 12.) Defendants do not contest this argument that their discovery burden will likely be reduced by the work they have already done, other than by repeating that they lack resources. (Defs.' Rep. Br., Dkt. 304, at 8–9.)

Lastly, given that this case is finally in the discovery phase after two years of motion practice and that only these Defendants, out of dozens in this case, have requested a discovery stay, the Court finds that granting the discovery stay would "impede the just and speedy administration" of this lawsuit. *Hachette Distribution*, 136 F.R.D. at 359.

Accordingly, the Court finds that Defendants have failed to show "good cause" for a stay of discovery and denies that request.

## CONCLUSION

For the reasons stated herein, the Court denies Defendants' motion to reconsider and stay discovery.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 2, 2022
       Brooklyn, New York