UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
HICKSVILLE WATER DISTRICT,

       Plaintiff,

  -against-

JERRY SPIEGEL ASSOCIATES, INC., et al.,

       Defendants.
----------------------------------------------------------X

REPORT AND
RECOMMENDATION
19 CV 6070 (PKC)(RML)

LEVY, United States Magistrate Judge:

       By order dated November 5, 2024, the Honorable Pamela K. Chen, United States District Judge, referred plaintiff's motion for default judgment against defendant Alsy Manufacturing, Inc. to me for report and recommendation. For the reasons stated below, I respectfully recommend that the motion be granted.

## BACKGROUND

       Plaintiff Hicksville Water District ("plaintiff") commenced this action in 2019 against more than fifty entities under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607 and 9613, and state law, alleging that defendants contaminated plaintiff's fourteen water supply wells with the chemical 1,4-Dioxane. (See First Amended Complaint, dated July 31, 2020 ("Am. Compl."), Dkt. No. 112.) Plaintiff has settled with all but one defendant, Alsy Manufacturing, Inc. doing business as Emess Manufacturing, Inc. ("Alsy" or "defendant"). (See Letters of Robert Gitelman, Esq., dated July 30, 2024 and Aug. 7, 2024, Dkt. Nos. 421, 423.) Plaintiff properly served Alsy with the summons and complaint through the New York Secretary of State. See N.Y. BUS. CORP. L. § 306(b)(1); FED. R. CIV. P. 4(h)(1)(B). (Affidavit of Service of Sean Warner, sworn to Oct. 16, 2019, Dkt. No. 374-2.) Alsy has not answered or appeared in this action, and on October 12, 2023, the Clerk of the Court entered Alsy's default. (See Certificate of Default,

dated Oct. 12, 2023, Dkt. No. 375.) The following facts, as drawn from plaintiff's amended complaint, are accepted as true for the purposes of this motion. (Am. Compl.)

Plaintiff is a water district in Long Island supplying potable water to over 48,000 residents and customers in the exercise of its powers, duties and responsibilities as a local governmental entity. (Id. ¶ 42.) Plaintiff maintains and operates public drinking water supply wells, including wells 1-4, 1-6, 4-2, 5-2, 5-3, 6-1R, 6-2, 8-1, 8-3, 9-1, 9-2, 9-3, 10-1 and 11-1 (the "monitoring wells"). (Id. ¶ 5.) Alsy is a New York corporation that operated the property at 270–280 Duffy Avenue in Hicksville, New York, known as the Alsy Manufacturing site, from 1975 to 1991. (Id. ¶¶ 177, 178, 180.) Alsy manufactured electric lamps and lampshades at its facility, and its manufacturing processes included bronze plating, electroplating, and antiquing. (Id. ¶ 180.)

The Alsy Manufacturing site is a State Superfund site. (Id. ¶ 179.) Waste material generated from Alsy's operations at the Alsy Manufacturing site included metal plating waste, wastewater treatment sludge, paint thinner, and acidic paint stripper. (Id. ¶ 181.) In addition to heavy metals in the soil, chlorinated solvents including 1,1,1-Tricloroethane were found in the soil vapor at the site. (Id. ¶ 182.) The groundwater was also contaminated; groundwater testing conducted at the site in 2018 confirmed the presence of 1,4-Dioxane in each of the monitoring wells. (Id. ¶ 183.) The hazardous and toxic substances released at the Alsy Manufacturing site infiltrated the groundwater, which migrated off-site, contaminating plaintiff's drinking water supply. (Id. ¶ 184.) Plaintiff now seeks a judgment against Alsy in the amount of $39,721,710. (Plaintiff's Memorandum of Law, dated Nov. 4, 2024 ("Pl.'s Mem."), Dkt. No. 429-2, at 4; Plaintiff's Statement of Damages, dated Nov. 4, 2024 ("Statement of Damages"),

Dkt. No. 429-3, ¶ 3.) Plaintiff does not seek an award of attorney's fees, costs, prejudgment interest, or any other relief. (Statement of Damages ¶ 4.)

### DISCUSSION

A. Default Judgment Standard

Federal Rule of Civil Procedure 55 imposes "a two-step process for obtaining a default judgment." Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). First, if a defendant fails to appear, the plaintiff must obtain an entry of default by the clerk of the court. Id. (citing FED. R. CIV. P. 55(a)). Second, once default is entered against the non-responsive defendant, the plaintiff "must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2). Plaintiff has satisfied these requirements.

On consideration of a motion for default judgment, the court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Payamps v. M & M Convenience Deli & Grocery Corp., No. 16 CV 4895, 2019 WL 8381264, at *5 (E.D.N.Y. Dec. 9, 2019) (citation omitted). If the complaint suffices to establish liability, the court must "conduct an inquiry . . . to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." Sanchez v. Ms. Wine Shop Inc., 643 F. Supp. 3d 355, 365 (E.D.N.Y. 2022) (quoting Joe Hand Promotions, Inc. v. Benitez, No. 18 CV 6476, 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), report and recommendation adopted,

2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020)); see also Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991).

    B.  <u>Liability Under CERCLA</u>

Plaintiff seeks to hold defendant jointly and severally liable under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all remedial and response costs incurred and to be incurred by plaintiff in connection with the contamination of the monitoring wells with 1,4-Dioxane.  (Pl.'s Mem. at 2–3; Am. Compl. ¶ 394.)  CERCLA is "a comprehensive federal law governing the remediation of hazardous waste sites." W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc., 559 F.3d 85, 88 (2d Cir. 2009).  Its "primary purposes are axiomatic: (1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." Price Trucking Corp. v. Norampac Indus., Inc., 748 F.3d 75, 79 (2d Cir. 2014) (internal quotation marks and citation omitted).  The statute "imposes strict liability on owners and facility operators," id. at 79-80, and courts "construe CERCLA liberally to advance its dual goals," N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp., 766 F.3d 212, 220 (2d Cir. 2014) (internal quotation marks and citation omitted).  Thus, under CERCLA, property owners and operators are "strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there." Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 (2d Cir. 2010) (citations omitted).  "[E]ven a minimal amount of hazardous waste brings a party under the purview of the statute" and "[t]he traditional tort concept of causation plays little or no role in the liability scheme." Id. at 131.

To make out a prima facie case for liability under section 107(a), "a plaintiff must establish that: (1) the defendant is an 'owner' or is otherwise liable under 42 U.S.C. § 9607(a)(1)-(4); (2) the site is a 'facility' as defined by 42 U.S.C. § 9601(9); (3) there has been a

4

release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or the threat; and (5) the costs and response conform to the National Contingency Plan."[1] Price Trucking Corp., 748 F.3d at 80 (citations omitted). I will briefly address each element.

      i.    Covered Entity and Facility

Plaintiff has alleged sufficient facts to establish the first and second elements of a CERCLA claim against defendant. As for the first element, a party is a covered entity if it falls into any of the four categories listed in 42 U.S.C. § 9607(a)(1)–(4). Those four classes of "potentially responsible parties" ("PRPs") are: "(1) present owners and operators of facilities that accepted hazardous substances for transport; (2) past owners and operators of such facilities; (3) generators of hazardous substances; and (4) certain transporters of hazardous substances." New York v. Town of Clarkstown, 95 F. Supp. 3d 660, 674 (S.D.N.Y. 2015) (quoting FirstEnergy Corp., 766 F.3d at 220). As for the second element, section 101(9) of CERCLA defines "facility" as

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been

---

[1] The following statutory definitions are relevant to these elements: "Person" is defined to include a corporation. 42 U.S.C. § 9601(21). "Disposal" is defined by reference to the Solid Waste Disposal Act (the "SWDA"). Id. § 9601(29). The SWDA defines "disposal" as the "discharge, deposit, injection, dumping, spilling, leaking or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3). "Solid Waste" under the SWDA is defined in part as "discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations." Id. § 6903(27). "Hazardous substance" is defined in part under CERCLA as "any element, compound, mixture, solution, or substances" designated as hazardous in Table 302.4 of 40 C.F.R. § 302. 42 U.S.C. § 9601(14).

> deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

42 U.S.C. § 9601(9).

Plaintiff alleges that Alsy is liable as a covered entity under 42 U.S.C. § 9607(a)(2) because it is a New York corporation (Am. Compl. ¶ 177) that operated and occupied the Alsy Manufacturing site where hazardous substances were released, contaminating plaintiff's water supply (id. ¶¶ 178, 181–84). See 42 U.S.C. § 9607(a)(2) (imposing liability on "any person who at the time of disposal of any hazardous substances owned or operated any facility at which such hazardous substances were disposed of"). The Alsy Manufacturing site is a "facility" within the meaning of CERCLA, 28 U.S.C. § 9601(9), insofar as plaintiff alleges that hazardous substances were found in the soil, soil vapor, and groundwater thereon. Plaintiff has therefore satisfied the first and second elements of its CERCLA claim against defendant.

      ii.    <u>Release of Hazardous Substances</u>

Plaintiff has also set forth sufficient allegations to satisfy the third element, that a release of hazardous substances occurred at the facility. CERCLA defines a "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)[.]" 42 U.S.C. § 9601(22); see also <u>Niagara Mohawk</u>, 596 F.3d at 130 ("[A] party seeking costs [under CERCLA] need only prove: [that] there was a release or threatened release, which caused incurrence of response costs, and that the defendant generated hazardous waste at the cleanup site." (quotations, brackets and citations omitted)). As described above, plaintiff has alleged that 1,4-Dioxane spilled, leaked, or leached into the land, soil, and

6

groundwater at the Alsy Manufacturing site.  (Am. Compl. ¶¶ 1, 2, 7, 12-27, 181–184.)  1,4-Dioxane is designated as hazardous under Table 302.4 of 40 C.F.R. § 302, and therefore is "a hazardous substance under CERCLA."  New York v. Next Millennium Realty, LLC, 160 F. Supp. 3d. 485, 507–08 (E.D.N.Y. 2016) (quoting B.F. Goodrich Co. v. Murtha, 958 F.2d 1192, 1200 (2d Cir. 1992) ("A substance need only be designated as hazardous under any one of the four environmental statutes or under Table 302.4 to be a hazardous substance under CERCLA.")). Thus, plaintiff sufficiently alleges that hazardous substances were disposed of at the Alsy Manufacturing site while defendant operated it.  See Next Millennium Realty, 160 F. Supp. 3d at 508–09 (collecting cases).

        iii.    Costs Incurred and the National Contingency Plan

Finally, plaintiff has also pleaded sufficient facts to satisfy the fourth and fifth elements regarding incurred costs and conformity with the National Contingency Plan.  In general, "response costs are liberally construed under CERCLA."  W.R. Grace & Co.-Conn., 559 F.3d at 92.  Plaintiff alleges that it "has incurred and will incur response costs to investigate, test, monitor, install, operate and maintain treatment systems, and take other measures to address the contamination of its property and its drinking water supply with 1,4-Dioxane."  (Am. Compl. ¶ 392.)  Plaintiff further alleges that its "response costs are consistent with the National Contingency Plan, 40 C.F.R. [§] 300."  (Id. ¶ 393.)   In sum, plaintiff has satisfied all of the elements for liability under CERCLA section 107(a).

  C.  Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015) (quotations, brackets and citations omitted); see also City of New York v.

7

Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011) ("The entry of a default, while establishing liability, is not an admission of damages." (quotations and citation omitted)). Although a court may conduct a hearing on the issue of damages under Federal Rule of Civil Procedure 55(b)(2), it is not required to do so. Bricklayers, 779 F.3d at 189; see also Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory.")

To support its claim for damages, plaintiff has submitted the declarations of Timothy McGuire, a Licensed Professional Engineer with H2M Architects & Engineers ("H2M"), a professional consulting and design firm that provides engineering and design services to water providers in Nassau and Suffolk Counties, including plaintiff. (See Declaration of Timothy McGuire, dated Jan. 8, 2024, Dkt. No. 390-1; Supplemental Declaration of Timothy McGuire, dated Nov. 4, 2024 ("McGuire Supp. Decl."), Dkt. No. 429-6.) Mr. McGuire calculates, based on his expertise and experience providing engineering services to water districts, that the total cost (in today's dollars) that plaintiff is expected to incur during the next fifty years to treat the aquifer water drawn by plaintiff's wells that has been contaminated with 1,4-Dioxane is $39,721,710. (McGuire Supp. Decl. ¶ 9.) Mr. McGuire has provided a detailed expert letter report containing a breakdown of cost estimates for treating and maintaining the contaminated wells at two of its water treatment plants, including capital and operational expenses. (See Letter Report of Timothy McGuire, dated Nov. 24, 2024, Dkt. No. 429-7, and appendices A–F.)

Having reviewed plaintiff's documentation, I find that plaintiff has established response costs in the total amount of $39,721,710. All former owners and operators who contributed to the contamination are jointly and severally liable for costs incurred pursuant to CERCLA section 107(a), 42 U.S.C. § 9607(a). R&G Enters., Inc. v. Choi, No. 19 CV 11699, 2022 WL 16731449, at *9 (S.D.N.Y. May 24, 2022), report and recommendation adopted, 2022 WL 5434986 (S.D.N.Y. Oct. 7, 2022) (citing New York v. SCA Servs., Inc., 785 F. Supp. 1154, 1156 (S.D.N.Y. 1992)). I therefore recommend that plaintiff be awarded $39,721,710 in damages.[2]

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion be granted and that a default judgment be entered against defendant Alsy in the amount of $39,721,710. Plaintiff is directed to serve a copy of this Report and Recommendation on defendant, and to file proof of service with the court within ten (10) days of this Report and Recommendation. Any objections to this Report and Recommendation must be filed electronically within fourteen (14) days. Failure to file objections within the specified time may waive a right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

*Robert M. Levy*
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
September 12, 2025

---

[2] As described in plaintiff's proposed order, defendant is entitled to a set-off for all confidential payments received from other defendants. (See Proposed Order, Dkt. No. 429-4.)